**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| RAYMOND MORRISSEY, )<br><br>*Plaintiff,* )<br>v. )<br><br>WEBSTER BANK, N.A., )<br><br>*Defendant.* ) | Civil Action No. 05-10984-WGY |

**WEBSTER BANK N.A.'S OPPOSITION TO**
**PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**

## I.   INTRODUCTION

Over three months after plaintiff Raymond Morrissey ("Morrissey") served a purported demand under M.G.L. c. 93A upon defendant Webster Bank, N.A. ("Webster"), after Morrissey already amended the complaint once without a c. 93A claim, and just one month before dispositive motions are due to be filed in this action, Morrissey filed a Motion for Leave to File Second Amended Complaint (the "Motion").  In addition to substantively altering Morrissey's allegations against Webster under the Electronic Funds Transfer Act, the proposed complaint alleges a new claim against Webster under c. 93A.  It is self-evident that Morrissey possessed the information upon which he bases his c. 93A claim at the time he filed the Complaint and the Amended Complaint in this action.  However, Morrissey's Motion offers no explanation whatsoever for the delay.  Moreover, even if there was some reason to justify Morrissey's failure to previously allege his claim under c. 93A, Morrissey's Motion must be denied, because any such amendment would be futile.

## II.     BACKGROUND

Morrissey commenced this action on or about May 12, 2005 by filing a Complaint with this Court.  The Complaint asserted that Morrissey is entitled to relief under the Electronic Funds Transfer Act, 15 U.S.C. § 1693, *et seq.* (the "EFTA"), and Federal Reserve Board Regulation E, 12 C.F.R. § 205.16 ("Regulation E"), because Webster's automated teller machine ("ATM") surcharge notices purportedly do not comply with the applicable requirements.  Among other things, the Complaint alleged that Webster's ATM fee notices are "inconspicuous."  However, when counsel for Webster pointed out that the Complaint offered insufficient factual allegations in this regard, counsel for Morrissey agreed and represented that Morrissey intended to file an amended complaint no later than June 24, 2005.  Nonetheless, Morrissey waited until August 12, 2005 to file his Amended Complaint.[1]  Webster filed its Answer and Affirmative Defenses to Plaintiff's Amended Complaint with the Court on August 25, 2005.

On September 2, 2005, the Parties conferred pursuant to Fed. R. Civ. P. 26(f) to discuss the pre-trial schedule and the Joint Statement of Counsel Pursuant to Local Rule 16.1(D) (the "Joint Statement").  The Parties agreed to propose to the Court that all discovery be postponed in favor of filing dispositive motions on the narrow issue of whether Webster's statement in its ATM surcharge disclosure that a fee "may" be charged to non-Webster cardholders is in compliance with the EFTA and Regulation E.  Under the Joint Statement, which the Court adopted by Order dated September 26, 2005, the deadline for dispositive motions is October 31, 2005.

Although Morrissey sent a letter dated June 14, 2005 to counsel for Webster purporting to assert a demand pursuant to c. 93A (the "June 14 letter") (copy attached hereto as Exhibit A),

---

[1] Morrissey has apparently abandoned his assertions that Webster's notices are "inconspicuous."  <u>See</u> Amended Complaint, ¶ 13.

neither the Complaint, nor the Amended Complaint asserted any claims under c. 93A. Indeed, Morrissey could have made his c. 93A claims in the original Complaint or in the Amended Complaint, but instead waited until September 29, 2005 to file his Motion, over three months after sending the June 14 letter, and just four days before the scheduling order deadline for such motions expired. For the reasons described below, Morrissey's proposed amendment would be futile and would unduly delay this action and, accordingly, Morrissey's Motion must be denied.

## III.    STANDARD OF REVIEW

Under Rule 15(a) of the Federal Rules of Civil Procedure, after a responsive pleading is served[2] "a party may amend the party's pleading only by leave of court … when justice so requires." Fed. R. Civ. P. 15(a) (emphasis added). A motion to amend may be properly denied due to "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." Foman v. Davis, 371 U.S. 178, 182 (1962). See also Resolution Trust Co. v. Gold, 30 F.3d 251, 252 (1st Cir. 1994) ("[l]eave to amend is to be freely given, unless it would be futile, or reward, inter alia, undue or intended delay.") (Internal quotes and citations omitted.)

## IV.    ARGUMENT

### A.    The proposed amendment would be futile.

"[A] court has the discretion to deny [a motion to amend] if it believes that, as a matter of law, amendment would be futile." Carlo v. Reed Rolled Thread Die Co., 49 F.3d 790, 792-93 (1st Cir. 1995) (holding plaintiff's motion to amend would be futile where proposed state law claims were preempted by ERISA.) "Futility means that the complaint, as amended, would fail

---

[2] The Amended Complaint, which Morrissey filed prior to Webster's Answer, was filed "as a matter of course" without leave of court pursuant to Fed. R. Civ. P. 15(a).

to state a claim upon which relief could be granted." Glassman v. Computervision Corp., 90 F.3d 617, 623 (1st Cir. 1996) (citations omitted). A district court determines whether a motion to amend would be futile under "the same standard of legal sufficiency as applies to a Rule 12(b)(6) motion." Id. For the reasons described below, Morrissey cannot state a claim under c. 93A and, accordingly, granting Morrissey's Motion would be futile.

## 1. Morrissey's purported c. 93A demand letter is defective.

As a prerequisite to bringing suit under c. 93A, Morrissey was required to serve a legally sufficient demand letter upon Webster at least thirty days before filing suit. M.G.L. c. 93A, § 9(3). The statute provides, in pertinent part:

> At least thirty days prior to the filing of any such action, a written demand for relief, identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered, shall be mailed or delivered to any prospective respondent. (Emphasis added.)

M.G.L. c. 93A, § 9(3).

Thus, the demand letter must (1) be served at least thirty days prior to filing suit; and (2) reasonably inform the defendant of the factual basis for the alleged unfair or deceptive act or practice. See, e.g. Spilios v. Cohen, 38 Mass. App. Ct. 338, 342 (1995). The June 14 letter did neither and, accordingly, Morrissey cannot meet his "burden of alleging and proving the timely sending of a letter complying with the statutory specifications" of M.G.L. c. 93A, § 9(3). Id.

Morrissey's notice did not describe Webster's conduct that allegedly violated c. 93A. Rather, the June 14 letter simply stated: "I assume that Webster Bank has received a copy of the federal court Complaint filed in Boston. Mr. Morrissey contends that the allegations referenced in said complaint violate Mass. G.L. ch. 93A." (See Exhibit A.) The remainder of the June 14 letter consisted primarily of a block quotation from the statute. (See id.)

-4-

In the Complaint, Morrissey asserts in conclusory fashion that he is entitled to relief due to Webster's ATM fee notices that are in purported violation of the EFTA.  Paragraph 13 of the Complaint alleges as follows:

> Defendant Webster Bank, N.A. did not post notice on its ATMs that complied with 15 U.S.C. § 1693b and 12 C.F.R. § 205.16.  The notice is inconspicuous and states that the user "may" be charged a $1.50 fee, whereas it should be conspicuous, [sic] state that a fee will be charged.

Because neither the June 14 letter nor the allegations in the Complaint to which the letter makes reference offer any information as to the factual basis for Morrissey's claims – much less allege any unfair or deceptive act or practice –  Morrissey failed to furnish a notice "that provides the prospective defendant with an opportunity to review the facts and the law involved to see if the requested relief should be granted or denied."  Spring v. Geriatric Authority of Holyoke, 394 Mass. 274, 288 (1985) (citation and internal quotes omitted).  Moreover, the Complaint does not allege any facts that describe how the notices on Webster's ATMs are purportedly "inconspicuous."[3]  Because counsel for Morrissey had agreed as of June 16, 2005 to amend the Complaint to provide a more definite statement of his allegations of inconspicuousness, the June 14 letter could not possibly comply with the requirements of M.G.L. c. 93A, § 9(3) given that the letter (1) makes no factual allegations at all, and (2) incorporates by reference the allegations in a Complaint that the Parties agreed was materially lacking in specificity, and which has been subsequently amended.

Therefore, because Morrissey failed to serve a demand letter that adequately informed Webster of the claimed wrongful conduct and the nature of Morrissey's alleged injury, Morrissey's proposed c. 93A claim would be futile.  See Thorpe v. Mutual of Omaha Ins. Co.,

---

[3] Even if Webster could ascertain the factual bases that Morrissey alleges in support of his c. 93A claims, Webster denies that Morrissey can allege any set of facts entitling him to relief under c. 93A, the EFTA, or any other statute or law.

984 F.2d 541, 544 (1st Cir. 1993) (affirming grant of summary judgment to defendant on plaintiff's c. 93A claim where plaintiff's demand letter failed to provide any specific evidence of the injury claimed).

### 2.    Morrissey's c. 93A claim is duplicative of his EFTA claim.

Morrissey's c. 93A claim is futile because it would not provide any potential remedy that is not already available to him under the EFTA. The EFTA provides for a private cause of action, punitive damages, and attorney's fees, much like c. 93A. <u>See</u> 15 U.S.C. § 1693m(a). Further, to the extent that Webster's notices comply with the EFTA, they will also be deemed to comply with Massachusetts law. Under Massachusetts law, the disclosure of ATM transaction fees is governed by the regulations promulgated by the Massachusetts Division of Banks. <u>See</u> M.G.L. c. 167B, § 2; 209 C.M.R. § 31.00, *et seq.* (the "Regulations"). Failure to post notices that comply with the Regulations "constitute[s] an unfair and deceptive act or practice under M.G.L. c. 93A." However, under the express language of the Regulations, any ATM fee disclosures that comply with the EFTA also comply with Massachusetts law. <u>See</u> 209 C.M.R. § 31.02(3)-(4).

Forcing Webster to defend actions both under the EFTA and c. 93A for exactly the same allegedly unlawful conduct runs contrary to the purpose of the EFTA and represents a needless duplication of effort. <u>See</u> <u>Hospicomm, Inc. v. Fleet Bank, N.A.</u>, 338 F. Supp. 2d 578, 587 (E.D. Pa. 2004) ("The EFTA constructs a process for consumers wishing to contest unauthorized transfers, with clear burdens that must be satisfied in any suit. … [W]e conclude that … a cause of action for an unauthorized use of an ATM card should be brought under the EFTA, rather than Article 4 of the UCC.") Accordingly, Morrissey's proposed amendment would be futile, because his c. 93A claim is duplicative the remedies available under the EFTA.

**B.    The proposed amendment is designed to delay.**

"[A] motion to amend should be made <u>as soon as the necessity for altering the pleading</u> <u>becomes apparent.</u>  A party who delays in seeking an amendment is acting contrary to the spirit of the rule and runs the risk of the court denying permission because of the passage of time." Wright, Miller & Kane, <u>Federal Practice and Procedure:  Civil 2d</u> § 1488 (1990) (emphasis added); <u>see also</u> <u>Wimm v. Jack Eckerd Corp.</u>, 3 F.3d 137, 140 (5th Cir. 1993) ("[Plaintiffs'] failure to assert their [unfair trade practices] and mislabeling claims sooner, even though they were aware of the underlying facts at the outset of this action, supports the district court's finding of bad faith and dilatory motive.  Because such a finding justifies the denial of leave to amend, the district court did not abuse its discretion ….")

Here, Morrissey had all the facts in his possession upon which he bases his c. 93A claim well in advance of filing his Motion.  Indeed, as Morrissey himself acknowledges in the June 14 letter, the Complaint forms the entire universe of Morrissey's allegations under c. 93A.  Because Morrissey had this information at least as early as May 2005, there is nothing to justify his delay of over four months in asserting these claims in the face of a looming deadline to file dispositive motions in this action.  <u>See</u> <u>Logan Equipment Corp. v. Simon Aerials, Inc.</u>, 736 F. Supp. 1188 (D. Mass. 1990) (holding "plaintiff [did] not [make] a credible showing that its delay in seeking amendment was justified" where plaintiff was in possession of the facts forming the basis for the additional claims in his amended complaint at the time he brought suit.)

Morrissey offers the conclusory assertion that leave to amend under Fed. R. Civ. P. 15(a) "shall be freely given when justice so requires" as the sole grounds for his Motion.  Where Morrissey's delay in asserting a claim under c. 93A is apparently due solely to carelessness in drafting, Morrissey cannot carry his burden of demonstrating that justice requires granting his

Motion. See Ferrell v. Busbee, 91 F.R.D. 225, 231 (D. Ga. 1981) (denying motion to amend where plaintiff had failed to include additional proposed claims "through inadvertence and mistake.")  Moreover, nothing in Fed. R. Civ. P. 15(a) or any other authority requires the Court to grant a motion for leave to amend simply because it is filed before the scheduling order deadline. See Wimm, 3 F.3d at 141 (affirming denial of plaintiff's motion to amend brought before scheduling order deadline).  Therefore, this Court should decline Morrissey's invitation to prolong this litigation through the addition of claims that would, as described above, be an exercise in futility.

   **C.**  **The proposed amendment is unfairly prejudicial to Webster.**

    Morrissey's proposed amendment runs contrary to the jointly agreed-upon briefing schedule set forth in the Joint Statement and corresponding Order of the Court, and is unfairly prejudicial to Webster.  Webster reasonably relied on the allegations in Morrissey's Amended Complaint when it agreed to resolve, by dispositive motion, the narrow issue of whether Webster's use of the word "may" in its ATM fee disclosure complies with the EFTA.  At the same time counsel for Morrissey agreed to the schedule set forth in the Joint Statement, however, he was obviously aware of Morrissey's intentions to assert claims under c. 93A, as evidenced by the June 14 letter.  Nonetheless, Morrissey delayed filing his Motion until just four days before the expiration of the Scheduling Order deadline, with the deadline for dispositive motions just over a month away.

    In addition to adding a claim under c. 93A, Morrissey has made an additional substantive change to the proposed amendment without informing the Court.  Paragraph 13 of the proposed complaint alters Morrissey's assertions with respect to Webster's purported violation of the EFTA.  Paragraph 13 of the Amended Complaint alleges as follows:

> Defendant Webster Bank, N.A. did not post notice on its ATMs that complied with 15 U.S.C. § 1693b and 12 C.F.R. § 205.16.  The notices do not state that a fee will definitely be charged.  …  On information and belief, Webster Bank always charges a fee to non-Webster Bank cardholders.  The notice states that the user "may" be charged a $1.50 fee, whereas it should state that a fee will be charged.

Amended Complaint, ¶ 13.

In contrast, Paragraph 13 of the proposed complaint alleges as follows:

> Defendant Webster Bank, N.A. did not post notice on its ATMs that complied with 15 U.S.C. § 1693b and 12 C.F.R. § 205.16.  The notices do not state that a fee will definitely be charged under ascertainable circumstances.  …  On information and belief, Webster Bank always charges a fee to non-Webster Bank cardholders under ascertainable circumstances.

Proposed second amended complaint, ¶ 13 (emphasis added to reflect additional language).

Permitting Morrissey to add these new assertions at this late date would unfairly prejudice Webster and, accordingly, the Motion must be denied.  Webster agreed to an orderly mechanism to dispose of what it believed was the only issue in this case, namely, whether Webster's notice stating that a fee "may" be charged complies with the EFTA.  Now, Morrissey proposes an amendment that substantively alters the allegations in this action by asserting that Webster's notice is unlawful because Webster "always charges a fee … under ascertainable circumstances."  "The district court does not abuse its discretion by denying a motion to amend if granting leave to amend would unduly prejudice a party not afforded an adequate chance to respond to the newly-raised issues."   Samuels v. Wilder, 871 F.2d 1346, 1351 (7th Cir. 1989).

Webster reasonably relied on Morrissey's allegations in the Amended Complaint in consenting to postpone discovery in favor of the briefing schedule set forth in the Joint Statement.  Accordingly, permitting Morrissey to file a second amended complaint, just weeks before dispositive motions are due in this case would unfairly prejudice Webster in its defense of this action.  Therefore, Morrissey's Motion must be denied.

WHEREFORE, for the foregoing reasons, Webster respectfully requests that the Court deny Morrissey's Motion for Leave to File Second Amended Complaint.

Respectfully submitted,

WEBSTER BANK, N.A.,

By its attorneys,

/s/ Hobart F. Popick
Jonathan I. Handler (BBO # 561475)
Hobart F. Popick (BBO # 658763)
DAY, BERRY & HOWARD LLP
One International Place
Boston, Massachusetts 02110
(617) 345-4600

-and-

Steven M. Greenspan (admitted *pro hac vice*)
DAY, BERRY & HOWARD LLP
CityPlace I
Hartford, Connecticut 06103
Dated:  October 13, 2005                    (860) 275-0100

## CERTIFICATE OF SERVICE

I, Hobart F. Popick, hereby certify that on the 13th day of October, 2005, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing(s) to:  Christopher M. Lefebvre, Esq., Claude Lefebvre, P.C., Two Dexter Street, Pawtucket, Rhode Island 02860.

/s/ Hobart F. Popick
Hobart F. Popick

**EXHIBIT  A**



*FROM THE OFFICE OF THE*

## FAMILY AND CONSUMER LAW CENTER

*WWW.RICONSUMERLAW.COM*

CLAUDE F. LEFEBVRE
CHRISTOPHER M. LEFEBVRE, P.C.

*ATTORNEYS & COUNSELORS AT LAW*

June 14, 2005

**CERTIFIED MAIL**

Webster Bank NA
c/o: Hobart F. Popick, Esq.
Day, Berry & Howard LLP
260 Franklin Street
Boston, MA 02110-3179

Re: Raymond Morrissey v Webster Bank, N.A. ( C.A. No 05-10984)

Dear Mr. Popick:

I am writing to you in  your capacity as attorney for Webster Bank N.A. Based on your letter to me dated June 13, 2005 I assume that Webster Bank has received a copy of the federal court Complaint filed in Boston.

Mr. Morrissey contends that the allegations referenced in said complaint also violate Mass. G.L., ch. 93A, and he hereby gives notice as required by that statute.

Mr. Morrissey  contends that a reasonable resolution of the 93A claim would be payment of $20 per Massachusetts class member.

". . . Any person receiving such a demand for relief who, within thirty days of the mailing or delivery of the demand for relief, makes a written tender of settlement which is rejected by the claimant may, in any subsequent action, file the written tender and an affidavit concerning its rejection and thereby limit any recovery to the relief tendered if the court finds that the relief tendered was reasonable in relation to the injury actually suffered by the petitioner. In all other cases, if the court finds for the petitioner, recovery shall be in the amount of actual damages or twenty-five dollars, whichever is greater; or up to three but not less than two times such amount if the court finds that the use or employment of the act or practice was a willful or knowing violation of said section two or that the refusal to grant relief upon demand was made in bad faith with knowledge or reason to know that the act or practice complained of violated said section two. For the purposes of this chapter, the amount of actual damages to be multiplied by the court shall be the amount of the judgment on all claims arising out of the same and underlying transaction or occurrence, regardless of the existence or nonexistence of insurance coverage available in payment of the claim. In

addition, the court shall award such other equitable relief, including an injunction, as it deems to be necessary and proper. The demand requirements of this paragraph shall not apply if the claim is asserted by way of counterclaim or cross-claim, or if the prospective respondent does not maintain a place of business or does not keep assets within the commonwealth, but such respondent may otherwise employ the provisions of this section by making a written offer of relief and paying the rejected tender into court as soon as practicable after receiving notice of an action commenced under this section. . . ."


Sincerely,


Christopher M. Lefebvre


cc: Raymond Morrissey