UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RAYMOND MORRISSEY, )<br>)<br>*Plaintiff*, )<br>)<br>v. )<br>)<br>WEBSTER BANK, N.A., )<br>)<br>*Defendant*. )<br>) | Civil Action No. 05-10984-WGY |

**DEFENDANT WEBSTER BANK, N.A.'S MEMORANDUM IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT**

Defendant Webster Bank, N.A. ("Webster") is entitled to judgment as a matter of law as to both counts of Plaintiffs' Second Amended Complaint in this action, because Webster's automated teller machine ("ATM") fee notice provides an accurate and meaningful disclosure of its ATM fees to ATM users, in compliance with the Electronic Funds Transfer Act (the "EFTA").  Furthermore, because Webster's allegedly deficient ATM fee notice does not as a matter of law constitute an unfair or deceptive trade practice, Morrissey's M.G.L. c. 93A claim likewise fails as a matter of law.  Accordingly, Webster is entitled to summary judgment on both Counts of the Second Amended Complaint in this action.

**I.     INTRODUCTION AND PROCEDURAL BACKGROUND**

Plaintiff Raymond Morrissey ("Morrissey") commenced this action on or about May 12, 2005 by filing a Complaint with this Court.  Morrissey asserted in his initial Complaint that he was entitled to relief under the EFTA, 15 U.S.C. § 1693, *et seq.*, and Federal Reserve Board (the "Board") Regulation E, 12 C.F.R. § 205.16 ("Regulation E"), because Webster's ATM fee notices purportedly do not comply with the applicable requirements.

Morrissey sent a letter dated June 14, 2005 to counsel for Webster purporting to assert a demand pursuant to c. 93A (the "June 14 letter") (copy attached hereto as Exhibit A[1]). Although Morrissey filed an Amended Complaint on August 11, 2005, neither the Complaint nor the Amended Complaint asserted any claims under c. 93A. Webster filed its Answer and Affirmative Defenses to Plaintiff's Amended Complaint with the Court on August 25, 2005.

On September 2, 2005, the Parties conferred pursuant to Fed. R. Civ. P. 26(f) to discuss the pre-trial schedule and the filing of a Joint Statement of Counsel Pursuant to Local Rule 16.1(D) (the "Joint Statement"). The Parties agreed to propose to the Court that all discovery be postponed in favor of filing dispositive motions on the narrow issue of whether Webster's statement in its ATM fee notices that a fee "may" be charged to non-Webster cardholders is in compliance with the EFTA and Regulation E. The Court adopted the Joint Statement by Order dated September 26, 2005.

On September 29, 2005, Morrissey filed a Motion for Leave to File Second Amended Complaint which the Court granted by Order dated October 14, 2005. In addition to Morrissey's allegations against Webster under the EFTA, the Second Amended Complaint seeks to allege a new claim against Webster under c. 93A. Webster filed its Answer and Affirmative Defenses to the Second Amended Complaint ("Answer") on October 20, 2005.

## II.    FACTS[2]

On or about May 2, 2005, Morrissey performed an electronic funds transfer at a Webster ATM located at 27 Park Street, Attleboro, Massachusetts. (Second Amended Complaint, ¶ 7.)

---

[1]    The reference "Ex. __" refers to documents appended as exhibits to the Declaration of Hobart F. Popick, submitted herewith, which Webster incorporates herein by reference.

[2]    The accompanying Statement of Undisputed Material Facts As To Which There Is No Issue To Be Tried ("Statement"), which Webster incorporates herein by reference, sets forth in detail all of the undisputed facts relevant to Webster's Motion.

Morrissey is not a Webster bank account holder. (Second Amended Complaint, ¶ 4.) All Webster ATMs in Massachusetts display a placard notice on the face of the machine (the "Placard Notice") that states, in pertinent part: "Webster … may charge a $1.50[3] fee to process a cash withdrawal or cash advance performed with a card not issued by Webster Bank." (Declaration of Steven Russell, ¶ 6.[4])

Webster does not assess a fee on any transaction that is performed using a bank or credit card issued by Webster or that bears the Webster logo. (Id. at ¶ 7.) In addition, Webster does not assess a fee on non-Webster cardholder transactions performed at its Massachusetts ATMs if the ATM user: (1) is an account holder at a financial institution that participates in the "SUM" Program;[5] (2) is a recipient of Transitional Aid for Families with Dependent Children ("TAFDC"), American Red Cross ("ARC"), or Federal Emergency Management Agency ("FEMA") electronic benefits; or (3) the transaction is performed with a bank or credit card issued by a financial institution located outside of the United States. (Id. at ¶ 8.) The categories of transactions for which Webster waives its ATM fee change from time to time. (Id. at ¶ 9.) For example, on October 7, 2005, in response to the devastation caused by Hurricanes Katrina and Rita, Webster instituted a policy of waiving its ATM fee for users of Webster ATMs who are recipients of FEMA and ARC electronic benefits. (Id.)

Webster's ATMs determine whether a fee applies to a given transaction by reading the bank identification number ("BIN") imprinted on the bank or credit card used to conduct the

---

[3] For Webster ATMs not physically attached to a Webster branch, this amount appears as "$1.75." (Russell Decl. at ¶ 14.)

[4] The Declaration of Stephen F. Russell, submitted herewith, has been filed in unsigned form. Webster will file a signed copy as soon as it becomes available.

[5] The SUM Program is a reciprocal agreement among 493 financial institutions (320 of which do business in Massachusetts) to waive ATM fees for customers of member institutions. (Id. at ¶ 8.)

transaction.  (Id. at ¶ 10.)  The ATM transmits the card's BIN to a Webster central computer, which compares the card's BIN against Webster's master BIN list to determine whether a fee applies.  (Id.)  If the card has a Webster BIN, or if it has a BIN that falls into one of the categories of fee-waived transactions, the ATM does not impose a fee.  (Id. at ¶¶ 7, 8, 10.)  If a fee does apply to a transaction, the Webster ATM will immediately display a second written notice on the screen of the ATM (the "Screen Notice"), which states, in pertinent part:  "Webster Bank … adds to cash withdrawals (and credit card cash advances, if applicable) a terminal usage fee of $1.50.[6]  This charge is in addition to any fee which may be assessed by your financial institution."  (Id. at ¶ 11.)

Before the transaction may proceed, the ATM user must affirmatively accept the applicable fee by pressing the button on the ATM marked "YES."  (Id. at ¶ 12.)  If the user does not wish to accept the fee, the user may cancel the transaction and the fee by pressing the button on the ATM marked "NO."  (Id.)  If the user so elects, the Webster ATM will issue a receipt following the transaction that indicates the amount of the fee.  (Id. at ¶ 13.)  The receipt reproduced as Exhibit A to Morrissey's Amended Complaint indicates that Morrissey accepted the ATM fee by pressing the button marked "YES" on the Webster ATM.  (Id.)

Between July 6 and August 10, 2005, of the 41,194 transactions performed by non-Webster cardholders at Webster's Massachusetts ATMs, an ATM fee was imposed upon 9,286 (22.5%) of these transactions.  (Id. at ¶ 15.)  Conversely, no fee was imposed upon 31,908 (77.5%) of these non-customer transactions, constituting the vast majority of transactions performed by non-Webster cardholders during this period.  (Id.)

---

[6] For Webster ATMs not physically attached to a Webster branch, this amount appears as "$1.75."  (Russell Decl. at ¶ 14.)

### III.   LEGAL STANDARD

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Smith v. Robertshaw Controls Co., 410 F.3d 29, 34 (1st Cir. 2005) quoting Fed. R. Civ. P. 56(c).  A dispute is genuine "if it may reasonably be resolved in favor of either party." Cadle Co. v. Hayes, 116 F.3d 957, 960 (1st Cir. 1997).  "A fact is material if it 'might affect the outcome of the suit under the governing law.'" Robinson v. Bodoff, 355 F. Supp. 2d 578, 582 (D. Mass. 2005), quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

"After the moving party has averred that no genuine issue of material fact stands in the way of brevis disposition, the nonmovant bears the burden of demonstrating the movant's error." Okmyansky v. Herbalife Int'l of Am., Inc., 415 F.3d 154, 158 (1st Cir. 2005) citing Anderson, at 248.  "Summary judgment will be properly entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Kelly v. Marcantonio, 187 F.3d 192, 198 (1st Cir. 1999) quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal quotes omitted).  "In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, at 322-323 (internal quotes omitted).

### IV.   ARGUMENT

As set forth in the Joint Statement and the corresponding Order of the Court, the Parties have agreed that the sole (and dispositive) legal issue to be decided by the Court is whether Webster's statement in its Placard Notice that a fee "may" be charged to non-Webster Bank

cardholders is permissible under the EFTA and Regulation E. Webster is entitled to judgment as a matter of law on Morrissey's claims for at least four reasons. First, because Webster does not in fact impose a fee upon all transactions, Webster's Placard Notice is not only narrowly worded, but also accurate and meaningful to Webster's ATM users. Second, there is nothing in the EFTA or Regulation E that requires Webster to state in its Placard Notice that a fee "will" be imposed – especially here where "will" would be demonstrably incorrect in most circumstances. Third, the Board's recent proposed revisions to Regulation E expressly authorize use of the word "may" in ATM fee notices. Finally, Morrissey failed to serve an adequate demand letter prior to bringing suit as required by M.G.L. c. 93A, § 9, and thus Morrissey's c. 93A claim also fails as a matter of law. Therefore, this Court must enter summary judgment in favor of Webster on both Counts of the Second Amended Complaint in this action.

### A.     Webster's Placard Notice is accurate and understandable.

Webster's Placard Notice is as narrowly worded as possible while still being accurate and not misleading to Webster's ATM users. Webster does not, as Morrissey has suggested, charge a fee to all non-Webster cardholders. (Id. at ¶ 8.) Rather, Webster ATMs use the BIN printed on the card to determine which of several categories the transaction falls into and whether or not a fee applies. (Id. at ¶ 10.) On average, over the period from July 6 to August 10, 2005, Webster imposed a fee for only 22.5% of non-Webster cardholder transactions performed at Webster ATMs in Massachusetts. (Id. at ¶ 15.) Thus, the vast majority of non-Webster cardholders do not incur an ATM fee when using a Webster ATM.

Webster's Placard Notice correctly alerts users of the possibility that a fee may be imposed before an ATM user has inserted his card in the machine, at a point when the identity of the user is as yet unknown – and indeed, unknowable – to Webster. "May" is defined by Webster's Third New International Dictionary of the English Language, Unabridged (2002) as:

"be in some degree likely to." Id. at 1396. Until a Webster ATM user inserts his card, it is merely "in some degree likely" that a fee will apply to the contemplated transaction. Given that a fee is collected in fewer than one out of four non-Webster cardholder transactions, it is in fact much more likely that the fee may not be imposed and, accordingly, Webster's Placard Notice accurately communicates the mere possibility that the fee "may" be imposed. Thus, Webster's Placard Notice is an accurate and meaningful disclosure of Webster's ATM fee policy.

On the other hand, if Webster's Placard Notice were to state – as Morrissey suggests it should – that a fee "will" be charged to all non-Webster cardholders, it would be untruthful and misleading for at least three out of every four Webster ATM users. (See Russell Decl. at ¶ 15.) "Will" is "used to express simple action or intention without conscious reference to future time." Webster's Third New International Dictionary of the English Language, Unabridged 2616 (2002). Because Webster has no information as to an ATM user's identity before his card is inserted in a Webster ATM, Webster cannot "express intention" with respect to the collection of an ATM fee until the user has identified himself by placing his bank or credit card in the machine.

Moreover, a Placard Notice stating that a fee "will" be charged would require Webster to enumerate all of the circumstances in which a fee is not assessed, rendering Webster's Placard Notice unnecessarily complex and difficult to understand.[7] Such a notice would require each Webster ATM user to read several paragraphs of text on a small placard describing the multiple exceptions to Webster's ATM fee policy in order to determine whether a fee will apply to his

---

[7] Morrissey asserts in the Second Amended Complaint that Webster imposes an ATM fee "under ascertainable circumstances." Although it is not entirely clear what Morrissey means by the phrase "under ascertainable circumstances," Webster assumes, for present purposes, that Morrissey is alleging that Webster is able to specifically define the conditions under which it assesses an ATM fee.

particular transaction.  But "[m]eaningful disclosure does not mean more disclosure.  Rather, it describes a balance between competing considerations of complete disclosure and the need to avoid informational overload."  Ford Motor Credit Co. v. Milhollin, 444 U.S. 555, 568 (1980) (citations and internal punctuation omitted) (emphasis in original).  Assuming Webster's ATM users could even decipher such a complicated, convoluted and lengthy notice, it may not even be accurate at the time the user reads it because Webster frequently changes its ATM fee collection policies.  (Russell Decl., at ¶ 9.)

Webster's Placard Notice stating that a fee "may" be imposed gives Webster the needed flexibility to modify its ATM fee policies periodically to respond to market conditions and other events.  For example, Webster was able to quickly respond to a request by the Board to assist victims of hurricanes Katrina and Rita by waiving its ATM fee for recipients of electronic disaster relief benefits from FEMA and the ARC.  See Joint Press Release, "Agencies Encourage Insured Depository Institutions to Assist Displaced Customers" at http://www.federalreserve.gov/boarddocs/press/bcreg/2005/20050901/default.htm. (Copy attached hereto as Exhibit B) (see also Russell Decl., at ¶ 9).  Rather than having to replace every Placard Notice on each of its dozens of ATMs throughout Massachusetts and the northeastern United States, Webster was able to simply reprogram its central computer to recognize the BINs associated with FEMA and ARC electronic benefits cards as one of the categories of transactions for which Webster waives its ATM fee.  (See Russell Decl., at ¶ 10.)

Therefore, Webster's Placard Notice is designed to achieve the dual goals of putting its ATM users on notice of the possibility that a fee may be imposed, while achieving the flexibility and simplicity afforded by a brief and straightforward disclosure.  As described below, the

Placard Notice is immediately followed by a Screen Notice, which requires the ATM user to affirmatively assent to any applicable fee.

### B. Webster's Placard Notice complies with the spirit and the letter of the EFTA.

Contrary to Morrissey's assertions, there is nothing in the EFTA that requires Webster to state in its Placard Notice that a fee "will" be charged.[8] As described above, if Webster were to state in its Placard Notice that a fee "will" be charged, such a notice would be incorrect for the vast majority of Webster's ATM users. No reasonable interpretation of the EFTA would require Webster to post an incorrect and misleading notice. Such a notice would have no consumer benefit and would defy common sense. This is especially true when Webster's Screen Notice appears immediately after the user places his card in the machine and provides a precise, individualized disclosure of the existence and amount of any applicable fee.

#### 1. Nothing in the EFTA requires Webster to state that a fee "will" be imposed in its Placard Notice.

"In a case that requires construction of a federal statute, the first question a court must ask is whether the statute's meaning is plainly stated in its words. If the words are a clear expression of congressional intent, the inquiry need go no further." Chatman v. Gentle Dental Center of Waltham, 973 F. Supp. 228, 238 (D. Mass. 1997). Nothing in the plain language of the EFTA requires Webster to state that a fee "will" be imposed in its Placard Notice. Rather, the plain language of the EFTA simply requires Webster to provide notice to its ATM users of:

---

[8] Morrissey will likely argue that the Board's use of the word "will" in the current Regulation E constitutes an inflexible mandate that all ATM operators must state in their ATM fee notices that a fee "will" be charged. See 12 C.F.R. § 205.16(b)(1)-(2) ("An automated teller machine operator that imposes a fee … shall: (1) Provide notice that a fee will be imposed … and (2) Disclose the amount of the fee.") For the reasons stated below, it is apparent that the Board did not intend to require ATM operators to state that a fee "will" be charged when in fact it "may" not. To conclude otherwise would not be a reasonable interpretation of the EFTA; it is likewise apparent that the Board did not ever intend for the Regulation to be so interpreted.

"(i) the fact that a fee <u>is</u> imposed by such operator for providing the service; and (ii) the amount of any such fee." 15 U.S.C. § 1693b(3)(A) (emphasis added).

The EFTA's use of the word "is" does not require ATM operators to use a specific form of disclosure, but rather directs operators to provide a notice of a fee in those instances where a particular condition – the charging of a fee – exists. This follows from the plain meaning of the word "is" – a reference to the state of affairs, as they exist. See <u>Interstate Navigation Co. v. Div. of Publ .Util. and Carriers of the State of R.I.</u>, 824 A.2d 1282, 1289 (R.I. 2003) ("[t]he word 'is' is defined as 'the third person singular present indicative of the verb be. \*\*\* In its present state; as it stands.'"), <u>quoting</u> The American Heritage Dictionary of the English Language 693 (10th ed. 1981). Accordingly, when a fee <u>is</u> charged, notice must be given, however, when a fee <u>is not</u> charged, no notice need be provided.

It is unreasonable to interpret the EFTA to require Webster to give notice to its ATM users that a fee <u>will</u> be charged, when in fact, it <u>may</u> not be. Morrissey essentially attempts to insert an additional term into the EFTA that Congress did not intend. Courts should not "read into a statute a word that Congress purposely omitted, or, on [their] own initiative … rewrite Congress's language by ascribing to one word a meaning traditionally reserved for a different word." <u>U.S. v. Pitrone</u>, 115 F.3d 1, 6 (1st Cir. 1997). "It has been called a golden rule of statutory interpretation that unreasonableness of the result produced by one among alternative possible interpretations of a statute is reason for rejecting that interpretation in favor of another which would produce a reasonable result. This prudential canon of construction holds equally true of agency regulations." <u>Kelly v. U.S.</u>, 924 F.2d 355, 361 (1st Cir. 1991) (internal quotes and citations omitted).

Therefore, to read the requirement into the EFTA that Webster must state that a fee "will" be imposed, when it would result in a misleading and inaccurate disclosure, would be contrary to the EFTA's purpose of establishing a predicable framework for the relationship between ATM operators and users.  See Bank of America v. City and County of San Francisco, 309 F.3d 551, 564 (9th Cir. 2002), quoting 15 U.S.C. § 1693b:  ("The stated purpose of the EFTA is to 'provide a basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund transfer systems.'  The EFTA's 'primary objective is the provision of individual consumer rights.'")

Congress could have – but did not – provide a specific form of ATM fee notice requiring use of specified terms, as it did for certain disclosures under the Truth in Lending Act ("TILA"). See 15 U.S.C. § 1632(a) (requiring disclosure of the terms "annual percentage rate" and "finance charge"); Goldberg v. Delaware Olds, Inc., 670 F. Supp. 125, 127 (D. Del. 1987) (noting the TILA "sets forth specific mandatory requirements relating to the form in which disclosures are to be made.").  No such specific required terms appear in the EFTA.  The distinction in this regard between the TILA and the EFTA is especially striking given the similarities between the two statutes.  See Johnson v. West Suburban Bank, 225 F.3d 366, 378 (3d Cir. 2000) (noting provisions in the EFTA that were modeled on the TILA).  Although Congress knew how to – and did – give the Board the authority to issue "model clauses" for the various "Terms and Conditions of Transfers"  required by § 1693c of the EFTA, Congress did not do so with respect to the required ATM fee disclosures set forth in § 1693b.  See 15 U.S.C. § 1693b(b).

### 2. Webster's Screen Notice provides instantaneous, individualized and definitive disclosure that a fee "will" in fact be imposed.

In addition to its Placard Notice, Webster's ATMs also provide, as required by the EFTA, a Screen Notice within seconds "after the transaction is initiated and before the consumer is

-11-

irrevocably committed to completing the transaction" if a fee applies. (See Russell Decl. at ¶ 11); see also 15 U.S.C. § 1693b(d)(3)(B)(ii). Webster's Placard and Screen Notices comply with and fully implement the requirements of the EFTA. The Placard Notice informs Webster ATM users of the possibility that a fee may be imposed. (Russell Decl. at ¶ 6.) Once the ATM user inserts his card, and the ATM determines what category the transaction falls into, the ATM's Screen Notice states that the applicable fee will be imposed and requires the user to affirmatively assent to the fee before proceeding. (Id. at ¶¶ 10, 11.)

Given the EFTA's policies regarding disclosure of ATM fees, the notion that any Webster ATM user is not fully informed of the potential that a fee may be imposed is nonsensical. Under the EFTA, Banks are required to disclose ATM fees in at least four separate instances during the banking relationship. Comment of Consumer Bankers Association to Regulation E; Docket No. R-1234, at http://www.federalreserve.gov/SECRS/2005/October/20051013/R-1234/R-1234_17_1.pdf. (Copy attached hereto as Exhibit C.) First, banks must inform ATM users when they open an account that banks with whom the user does not maintain an account may impose ATM fees. See 12 C.F.R. § 205.7(b)(11). Second, the EFTA requires an ATM operator to alert any consumer approaching the machine by way of a notice on the machine of "the fact that a fee is to be imposed." 15 U.S.C. § 1693b(d)(3)(B)(i). Third, once a transaction is initiated, but before it is "irrevocably committed," the EFTA requires ATM operators to disclose that a fee will be imposed and the amount of the fee. See 15 U.S.C. § 1693b(d)(3)(ii). Fourth, if the consumer elects to complete a transaction subject to a fee, the ATM operator must make a printed receipt available to the consumer stating the amount of the applicable fee. See 12 C.F.R. § 205.9(a).

Therefore, by providing a Placard Notice stating that a fee "may" apply to the transaction, and by providing a Screen Notice before the user is given the option to consent to the fee, followed by written disclosure on a paper receipt following the transaction (in addition to whatever notices the ATM user's own financial institution provides), Webster's ATM users are informed on at least four occasions as to the possibility (or actual existence, if applicable) of an ATM fee.  (See Russell Decl. at ¶¶ 6, 11, 12, 13.)  Accordingly, Webster's fee disclosure policies comply with the letter and the spirit of the EFTA.[9]

### C. The Board's proposed revisions to Regulation E expressly authorize ATM fee notices stating that a fee "may" be imposed.

The proposed revisions to Regulation E demonstrate that the Board intends to expressly authorize banks such as Webster, which do not impose ATM fees upon all transactions, to state that an ATM fee "may" be imposed.  This Court should defer to the Board's reasonable interpretation of the EFTA.  Whenever Congress has explicitly delegated authority to an administrative agency to implement a statutory scheme, "the agency's regulation is given controlling weight unless it is arbitrary, capricious, or manifestly contrary to the statute." Household Credit Services v. Pfennig, 541 U.S. 232, 238-39 (2004), quoting Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-44 (1984) (citations and internal quotes omitted) (emphasis added).  Here, Congress has explicitly charged the Board with implementing the EFTA, and, accordingly, the Board's interpretation of the EFTA should be accorded deference.  See 15 U.S.C. § 1693b(a) ("The Board shall prescribe regulations to carry out the purposes of this title.")

---

[9]     Even if this Court finds that Webster's Placard Notice Does not comply with the EFTA or Regulation E, because Webster relied in good faith on the plain language of the EFTA and Regulation E, Webster may not be held liable to Morrissey in this action.  See 15 U.S.C. § 1693m(d)(1).

Morrissey will likely argue that the proposed Regulation E has not yet been finalized and therefore it is not controlling upon this Court. However, because the Board sought to <u>clarify</u> an ambiguity in (rather than effect a substantive change to) the current rule, the proposed revisions are a clear expression of the Board's reasonable interpretation of the purpose of the current Regulation E, and therefore, the proposed regulation should be accorded deference.[10] In issuing the proposed revisions, the Board stated:

> As proposed, § 205.16(b) would be revised to explicitly <u>clarify</u> that ATM operators may disclose in all cases that a fee will be imposed, or in the alternative, disclose <u>that a fee may be imposed</u> on consumers initiating an EFT or balance inquiry if there are circumstances under which some consumers would not be charged for such services.

12 C.F.R. Part 205, Electronic Fund Transfers, 70 Fed. Reg. 49892 (proposed Aug. 25, 2005) (emphasis added).

Moreover, in issuing the proposed revisions to Regulation E, the Board addressed the issue that is at the heart of this case, namely, that a literal interpretation of the current Regulation E would require a result that the Board did not intend and which runs contrary to the purpose of the EFTA. The Board stated as follows:

---

[10] While the First Circuit has not directly determined the weight that should be accorded to proposed regulations, it has recognized that district courts often do look to proposed regulations for guidance. See, e.g., Gaskell v. Harvard Coop. Soc'y, 3 F.3d 495, 500 (1st Cir. 1993) (citing proposed regulations, noting "some courts have relied on the Proposed Regulations, notwithstanding their interim status, to define the scope of employers' duties under COBRA"). Although the Circuits are not in unanimity, a number of courts have accorded deference to proposed regulations. See, e.g., Swint v. Protective Life Ins. Co., 779 F. Supp. 532, 554 (D. Ala. 1991) ("Although the regulations have not been adopted in final form, they are considered indicative of the Treasury Department's official policies regarding continuation coverage and are given great judicial deference."); VanScoter v. Sullivan, 920 F.2d 1441, 1449, (9th Cir. 1990) (although proposed regulation did not "have the force of law … [it] constitute[s] the [agency's] authoritative administrative interpretation of the governing statute … We find the [agency's] interpretation of the statute reasonable and defer to it.")

>The Board continues to believe that a literal interpretation of <u>the current rule could lead to overly broad disclosures of an ATM operator's surcharge practices</u> where some consumers would not be assessed a fee for usage of the ATM, and that <u>a reasonable interpretation of the statute and regulation would allow ATM operators to provide an alternative notices that a fee "may" be imposed to avoid potential consumer confusion</u>.

<u>Id.</u>

Thus, it is apparent that the proposed revisions to Regulation E are necessary given that the current Regulation E might be misapplied to reach a result contrary to the EFTA.

The proposed revisions demonstrate that the Board never intended Regulation E to impose any requirement that ATM operators state that a fee "will" be charged if a fee is not in fact charged in all instances. The Board further explained:

>Section 205.16 does not require that any sign be posted if no fee is charged to the consumer by the ATM operator. The rule is intended to allow consumers to identify immediately ATMs that generally charge a fee for use. <u>It is not intended to represent a complete disclosure to the consumer regarding the fees associated with the particular type of transaction the consumer seeks to conduct.</u> Rather, a more detailed disclosure of whether in fact a fee will be charged for the type of transaction contemplated by the consumer and the amount of the fee is required to be made <u>either on the ATM screen or on an ATM receipt before the transaction is completed</u>.

70 Fed. Reg. 49891-92.

Thus, the proposed revisions to Regulation E express a clear intention by the Board to expressly authorize ATM operators such as Webster to post short, accurate notices alerting ATM users to the potential that an ATM fee "may" be imposed.

**D.     Morrissey's c. 93A claim fails as a matter of law.**

Webster is entitled to summary judgment on Morrissey's c. 93A claim because Morrissey failed to serve a demand letter upon Webster that met the requirements of M.G.L. c. 93A, § 9(3). Furthermore, Webster is entitled to summary judgment on Morrissey's c. 93A claim because Webster's Placard Notice complies with the applicable requirements of the EFTA and Regulation E.

### 1.      Morrissey's purported c. 93A demand letter is defective.

Morrissey's c. 93A claim fails because Morrissey did not serve a legally sufficient demand letter upon Webster at least thirty days before filing suit as required by M.G.L. c. 93A, § 9(3). Service of such a demand is an "absolute prerequisite to an action asserted under [c. 93A]." <u>Ball v. Wal-Mart, Inc.</u>, 102 F. Supp. 2d 44, 54 (D. Mass. 2000) (citations omitted). M.G.L. c. 93A, § 9(3) provides, in pertinent part:

> At least thirty days prior to the filing of any such action, a written demand for relief, identifying the claimant <u>and reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered</u>, shall be mailed or delivered to any prospective respondent. (Emphasis added.)

M.G.L. c. 93A, § 9(3).

Thus, the demand letter must (1) be served at least thirty days prior to filing suit; and (2) reasonably inform the defendant of the factual basis for the alleged unfair or deceptive act or practice, the injury claimed, and the relief requested. <u>Spilios v. Cohen</u>, 38 Mass. App. Ct. 338, 342 (1995), <u>Thorpe v. Mutual of Omaha Ins. Co.</u>, 984 F.2d 541, 544 (1st Cir. 1993). Morrissey cannot meet his burden of alleging and proving that he served a demand letter meeting these requirements and, accordingly, Webster is entitled to summary judgment on Morrissey's c. 93A claim. See <u>Spilios</u>, at 342 (summary judgment to defendant appropriate where plaintiff failed to meet burden of proving she served an adequate demand letter); <u>Thorpe</u>, at 544 (affirming grant of summary judgment to defendant on plaintiff's c. 93A claim where plaintiff's demand letter failed to provide any specific evidence of the injury claimed or the damages requested).

Further, a demand letter must "<u>specifically</u> list the deceptive practices claimed" in order to meet the requirements of M.G.L. c. 93A, §9(3). <u>Whyte v. Connecticut Mut. Life Ins. Co.</u>, 818 F.2d 1005, 1014 (1st Cir. 1987) (emphasis added). Any claim not specifically asserted in the demand letter is waived. <u>Neuhoff v. Marvin Lumber & Cedar Co.</u>, 370 F.3d 197, 205-206 (1st

Cir. 2004). Morrissey's demand letter did not describe – specifically or otherwise – Webster's conduct that allegedly violated c. 93A. Rather, the June 14 letter simply stated: "I assume that Webster Bank has received a copy of the federal court Complaint filed in Boston. Mr. Morrissey contends that the allegations referenced in said complaint violate Mass. G.L. ch. 93A." (See Exhibit A.) The remainder of the June 14 letter consisted primarily of a block quotation from the statute. (See id.)

In the Complaint, Morrissey asserted in conclusory fashion that he is entitled to relief due to Webster's Placard Notices that are in purported violation of the EFTA. Paragraph 13 of the Complaint alleges as follows:

> Defendant Webster Bank, N.A. did not post notice on its ATMs that complied with 15 U.S.C. § 1693b and 12 C.F.R. § 205.16. The notice is inconspicuous and states that the user "may" be charged a $1.50 fee, whereas it should be conspicuous, [sic] state that a fee will be charged.

Because neither the June 14 letter, nor the Complaint to which the letter makes reference, offers any specific information as to the factual basis for Morrissey's claims – much less allege any unfair or deceptive act or practice – Morrissey failed to "define the injury suffered and the relief demanded in a manner that provide[d] [Webster] with an opportunity to review the facts and the law involved to see if the requested relief should be granted or denied." Spring v. Geriatric Authority of Holyoke, 394 Mass. 274, 288 (1985) (holding that letter charging defendant with "intentionally and/or negligently breach[ing] the rights of privacy associated with the person of Earle Spring" did not "reasonably describe the injury suffered.") (Citations and internal quotes omitted.)

Moreover, when counsel for Webster pointed out that the Complaint does not allege any facts that describe how Webster's Placard Notices are purportedly "inconspicuous,"[11] counsel for

---

[11]   Even if Webster could ascertain the factual bases that Morrissey alleges in support

Morrissey agreed and represented that Morrissey intended to file an amended complaint no later than June 24, 2005. Thus, because counsel for Morrissey had agreed as of June 16, 2005 to amend the Complaint to provide a more definite statement of his allegations of inconspicuousness, the June 14 letter could not possibly comply with the requirements of M.G.L. c. 93A, § 9(3) given that the letter (1) makes no factual allegations at all, and (2) incorporates by reference the allegations in a Complaint that the Parties agreed was materially lacking in specificity, and which has been subsequently amended on two occasions.

Therefore, because Morrissey failed to serve a demand letter that adequately informed Webster of the claimed wrongful conduct and the nature of Morrissey's alleged injury, Webster is entitled to summary judgment on Morrissey's c. 93A claim.

**2.     Morrissey cannot recover under c. 93A because Webster's Placard Notice complies with the applicable requirements of the EFTA.**

Even if Morrissey's demand letter met the requirements of c. 93A, § 9(3), Morrissey's c. 93A claim must fail because, as described above, Webster's Placard Notices comply with the applicable requirements of the EFTA and Regulation E. "Nothing in [c. 93A] shall apply to transactions or actions otherwise permitted under laws as administered by any regulatory board or officer acting under statutory authority of the commonwealth or of the United States." M.G.L. c. 93A, § 3. See also Cablevision of Boston, Inc. v. Public Improvement Comm'n., 38 F. Supp. 2d 46, 61 (D. Mass. 1999) (defendant's conduct does not violate c. 93A if a statutory or regulatory scheme "affirmatively permits the practice which is alleged to be unfair or deceptive"); Bierig v. Everett Square Plaza Assoc., 34 Mass. App. Ct. 354, 368 (1993) (because

---

of his c. 93A claims, Webster denies that Morrissey can allege any set of facts entitling him to relief under c. 93A, the EFTA, or any other statute or law.

evidence established that defendant's allegedly unlawful rent-setting practices were permitted by statute, defendant did not violate c. 93A).

Similarly, summary judgment on Morrissey's 93A claim is appropriate because Morrissey has failed to allege any independent factual basis for his claim. In Paragraph 23 of the Second Amended Complaint, Morrissey makes the conclusory assertion that "Defendant's violation of the EFTA also constitutes a violation of M.G.L. c. 93A." As described above, Webster is entitled to judgment as a matter of law on Morrissey's EFTA claim. Because Morrissey's c. 93A claim is identical in all material respects to his EFTA claim,[12] his c. 93A claim likewise must fail. See, e.g., Egan v. Athol Mem. Hosp., 971 F. Supp. 37, 47 (D. Mass. 1997) (where there was no evidence to support plaintiff's antitrust, monopolization, and tortuous interference claims, and where plaintiff made "no unique arguments related to his Chapter 93A claim," defendant was entitled to summary judgment on plaintiff's c. 93A claim); McCartin v. Westlake, 36 Mass. App. Ct. 221, 234 (1994) (where c. 93A claim was based upon same factual allegations as deceit claim, and plaintiff failed to prove deceit, c. 93A claim likewise failed); Bolen v. Paragon Plastics, Inc., 747 F. Supp. 103, 108 (D. Mass. 1990) (where plaintiff failed to state a claim for unjust enrichment, court held that complaint likewise failed to state a claim under c. 93A).

Therefore, because Morrissey's demand letter is deficient as a matter of law, and because Webster's ATM fee notices comply with the EFTA and Regulation E, Webster is entitled to summary judgment on Count II of the Second Amended Complaint.

---

[12] Morrissey's c. 93A claim also duplicates any potential remedy that is already available to him under the EFTA. The EFTA provides for a private cause of action, punitive damages, and attorney's fees, much like c. 93A. See 15 U.S.C. § 1693m(a).

## IV. CONCLUSION

For all of the foregoing reasons, there is no issue as to any material fact, and Webster is entitled to judgment as a matter of law as to all of Morrissey's claims in the Second Amended Complaint. Accordingly, this Court should grant Webster's motion for summary judgment.

Respectfully submitted,

WEBSTER BANK, N.A.,

By its attorneys,

 /s/ Hobart F. Popick
Jonathan I. Handler (BBO # 561475)
Hobart F. Popick (BBO # 658763)
DAY, BERRY & HOWARD LLP
One International Place
Boston, Massachusetts 02110
(617) 345-4600

-and-

Steven M. Greenspan (admitted *pro hac vice*)
DAY, BERRY & HOWARD LLP
CityPlace I
Hartford, Connecticut 06103
(860) 275-0100

Dated: October 31, 2005

### CERTIFICATE OF SERVICE

I, Hobart F. Popick, hereby certify that on the 31st day of October, 2005, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing(s) to: Christopher M. Lefebvre, Esq., Claude Lefebvre, P.C., Two Dexter Street, Pawtucket, Rhode Island 02860.

 /s/ Hobart F. Popick
Hobart F. Popick