**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

RAYMOND MORRISSEY,          )
          )
          **Plaintiff,**      )
          )        **CA No. 05-10984-WGY**
    **v.**          )
          )
WEBSTER BANK, N.A.,        )
          )
          **Defendant.**    )

**PLAINTIFFS' MEMORANDUM IN OPPOSITION
TO WEBSTER BANK'S MOTION FOR SUMMARY JUDGMENT**

      Plaintiff Raymond Morrissey submits the following memorandum in opposition to Defendant Webster Bank, N.A.'s Motion for Summary Judgment.

## I.    INTRODUCTION

      Webster Bank has filed a meandering and self-serving motion for summary judgment, grossly distorting the legal issue before the Court while simultaneously attempting to cast itself as both a persecuted deep pocket and a champion of disaster victims.  However, much of the information contained in the Memorandum in Support of its Motion for Summary Judgment ("Memorandum") is simply irrelevant to allegations raised in Plaintiff's Second Amended Complaint.  Though there do not appear to be any material facts in dispute, the Defendant's Motion for Summary Judgment must nevertheless fail.

      Congress has established certain laws for notifying consumers of any fees that will be charged in connection with using automatic teller machines ("ATMs"), codified at 15 U.S.C. §§1693 *et seq*. and known as the Electronic Funds Transfer Act ("the EFTA").  These laws require that ATM

1

operators post a "prominent and conspicuous" notice at their machines informing consumers that a fee will be imposed. The Code of Federal Regulations implementing the EFTA requires that if an ATM owner is going to charge a consumer for usage of it's machine then their must be a disclosure at the automated teller machine that provides that a fee "will be imposed." 12 C.F.R. § 205.16(b). It is this precise notice requirement that the Plaintiff alleges has been violated by the Defendant

In violation of these requirements, the notices on Webster Bank machines provide as follows:

Notice to Non-Webster Bank Cardholder-ONLY-Service Fee May Apply: Webster Bank, the owner of this terminal, may charge a $1.50 fee to process a cash withdrawal or cash advance performed with a card not issued by Webster Bank. This fee will be added to the withdrawal amount and deducted from your account. This fee is in addition to any fees your financial institution may impose for performing this transaction. This fee will Not be charged to Webster Bank Cardholders.

Ironically, Webster Bank's materials attached to it's Motion for Summary Judgment, clearly establish that at the time the Plaintiff withdrew money from Webster Bank's ATM in May of 2005, Webster Bank was perfectly capable of determining exactly which customers it would and would not charge a $1.50 fee for each cash withdrawal. If a non-Webster Bank customer was a member of the "SUM" Program or a non-US bank card holder, no fee would be charged.[2] Since the categories for which Webster Bank waives ATM fees were readily "ascertainable" as alleged by the Plaintiff, a statutorily compliant notice could easily have been drafted to simply add those categories at the end of the existing notice.[3]

---

[2] The implementation of Webster Bank's Hurricane Katrina fee waivers for FEMA and ARC cardholders would have occurred post-filing and are therefore irrelevant.

[3] "This Fee Will Not Be Charged to Webster Bank Cardholders, Non-US Bank Cardholders, and participating members of the SUM network [And Beneficiaries of Certain Disaster Benefit Programs.]"

## II.    **POSTURE OF THE CASE**

For purposes of brevity, Plaintiff does not dispute the recitation of the facts and procedural background of the case as refernced in parts I and II of Webster's memorandum.[4] Furthermore the Plaintiff does not disagree with 98% allegations contained in the Statement of Undisputed Facts To Which There is No Genuine Issue To Be Tried which has been filed by Webster.[5] It is important to note that the prior allegations referencing the conspicuous and prominency requirements of the EFTA regarding the location of the actual placard notice involving Webster's ATM fee notices have been eliminated. Though Webster spends an inordinate amount of time discussing the on screen notice requirements of the EFTA relating to the assessment of ATM usage fees, the Second Amended Complaint does not allege that Webster has violated this subsection of the statute. Rather, as Webster correctly assumes in footnote 7 of it's memoranda, the Plaintiff's allegation ( and basic theory of the case) is very straightforward.  Since Webster knows those circumstances in which it is going to charge a fee to a non customer for use of it's ATM for cash withdrawals, the use of the phrase "may charge a $1.50 fee" violates the express requirements of the EFTA.

---

[4]  The  parties agreed to temporarily dispense with discovery in lieu of filing immediate dispositive motions.  Plaintiff  determined that filing a Motion for Summary Judgment would be fruitless in light of the modification and clarification to the legal theory referenced in the Second Amended Complaint and the post scheduling order granting the request to amend. This point was conveyed to the Defendant and discovery was propounded on Webster.  Not surprisingly the Defendant was unwilling to acquiesce to answering the discovery requests and filed their motion for summary judgment.  As of the October 31, 2005 filing deadline for dispositive motions, Plaintiff could not possibly determine the "ascertainable circumstances" under which Webster Bank charges an ATM fee without initiating discovery on this issue.  Initially, Plaintiff was simply going to file a Rule 56(f) affidavit in response to Webster's motion. Fortunately, in light of the admissions contained in Webster's pleadings,  it is clear that it has violated the EFTA. Accordingly, the Court should treat this opposition as a counter Motion for Summary Judgment.

[5] Plaintiff nevertheless reserves the right to contest these facts during any other proceedings involving these allegations.

## III.    STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).  As recently explained by Judge Selya:

> These components are familiar: an issue is genuine if "a reasonable jury could resolve the point in favor of the nonmoving party," United States v. One Parcel of Real Prop., 960 F.2d 200, 204 (1st Cir.1992), and a fact is material if it "has the capacity to sway the outcome of the litigation under the applicable law," Nat'l Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir.1995).

Okmyansky v. Herbalife Intern. of America, Inc., 415 F.3d 154, 157 (1st Cir. 2005).

 "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims and defenses."   Celotex Corp. v. Catrett, 477 U.S. 317, 323-324 (1986).  In deciding a summary judgment motion, "the court must look at the record in the light most favorable to the party opposing the motion and must indulge in the light most favorable to the party opposing the motion and must indulge all inferences favorable to that party." Stephanischen v. Merchants Despatch Trans, 722 F.2d 922, 928 (1st Cir. 1983).  To survive a summary judgment on the basis of disputed material facts, the party opposing the motion must produce substantial evidence, going beyond the allegations of the complaint and supporting the claimed dispute, which would require a judge or a jury to resolve the conflicting versions of the truth at trial. Hahn v. Sargent, 523 F.2d 461, 464 (1st Cir. 1975); Matsushita Electrical Industrial Company v. Zenith Radio, 475 U.S. 574, 586 (1986).  The opposing party must set forth specific facts showing a

genuine issue for trial and may not rest upon mere allegations or denials of its pleadings. First Nat'l Bank v. Cities Services Co., 391 U.S. 253, 289 (1968).


IV.    **ARGUMENT**

A.    **Webster Was Required to Inform Consumers That a Fee Would Be Imposed for Withdrawals.**

The statute plainly requires Webster Bank to disclose that a fee will be imposed if it is going to charge a non customer for use of it's ATM for a cash withdrawal.  Webster Bank acknowledges, as it must, that the first rule of statutory construction is that the plain language of the statute should be applied. Chatman v. Gentle Dental Center of Waltham, 973 F.Supp.2d 157 (D.Mass. 1997).  The statute plainly provides that the disclosures must inform the consumer of the fact that a fee is charged. 15 U.S.C. §1639b(d)(3)(A)(I).  The regulations provide that an ATM operator that imposes a fee on a consumer shall: "Provide notice that a fee will be imposed for providing electronic fund transfer services or a balance inquiry. . . " 12 C.F.R. §205.16(b)(1) (emphasis added).  Courts should presume that a legislature "says in a statute what it means and means in a statue what it says there." In re Hart, 328 F.3d 45, 49 (1st Cir. 2003).  The statute uses language which plainly requires a definite and unambiguous disclosure that a fee will be imposed. It is clear that Webster Bank's notice is not sufficient.

Although the statute and regulations do not dictate the precise form the disclosures must take, it is clear that the statute and regulations require a definite disclosure as to whether or not a fee will be charged.  Whether the ATM operator who imposes such fees chooses to use the word "will" or

some other language that indicates that a fee will definitely be imposed is up to the operator.[6]  What cannot be permitted is a disclosure which does not provide the consumer with a definite answer as to whether a fee will be charged for a certain type of transaction, if the notice refers specifically to a type of transaction for which a fee is always imposed under readily "ascertainable circumstances."

Contrary to Webster Bank's suggestion, Plaintiff does not maintain that Webster Bank must lie to and or mislead consumers and tell them that a fee will be charged when it will not.  However if Webster Bank chooses to refer to cash withdrawals in its notices, and Webster Bank knows when it will and will not impose a fee on non-customers for cash withdrawals, then it's notice must inform consumers when such a fee will be imposed.  There is nothing misleading about such a disclosure.  To the contrary, it serves the statutory purpose of making sure the consumer is informed that a fee will be imposed **before the consumer invests any time into using the ATM in question**[7].  Burns v. First American Bank, 2005 U.S.Dist. LEXIS 9485, *15-16 (N.D.Ill.) ("EFTA's purpose is to protect the consumer."). ( emphasis added).

Webster Bank contends not only that its notices comply with the statutory requirements but that it *must* be permitted to state that a fee "may" be charged.  In support of this allegation, it argues

---

[6]  There are many ways fees could properly be disclosed without using the word "will." For example, the notice could state as follows: Webster  Bank charges a fee  to non-customers for withdrawals. This fee does not apply to Non-US Bank Cardholders, and participating members of the SUM network [And Beneficiaries of Certain Disaster Benefit Programs.]"

[7]  Webster indirectly acknowledges this important principle. By its use of the words "irrevocably committed", Webster recognizes that once a user is in the system he is somewhat committed ( a lesser degree than 'irrevocably" committed) to complete the transaction. Memoranda, at page 12 ¶1.

first that the "majority" of its ATM withdrawal customers are not charged any fee at all.[8]   Thus,

the use of the word "may"[9] is not only accurate, it is best practices.   Second,  it argues that the

EFTA's use of the word "is" only requires ATM notices to disclose a charge when a fee "is"

charged.[10]  Thus, "when a fee is charged, notice must be given, however, when a fee is not charged,

no notice need be provided.  (emphasis in original)"  Memoranda, at page 10, ¶2.

Webster's attempt to dissect the plain meaning of the statute and thereafter rewrite it to

conveniently suit it's misinterpretations, must fail. The EFTA does not **_require_** banks to charge for

ATM services.  In fact, on information and belief, some banks have begun waiving all non-customer

ATM charges.  Webster Bank could have joined that movement[11] and waived all its  non-customer

ATM charges for cash withdrawals.  However, if it is going to continue charging a fee to withdraw

cash from its ATMs, both the EFTA and 12 C.F.R. §205.16(b)(1) require it to give notice "that a fee

will  be  imposed  for  providing  electronic  fund   transfer  services."  The  9,286  Massachusetts

consumers[12] that were charged a fee for cash withdrawals from a Webster ATM in July/August 2005

( and presumably the 111,432 putative class members during the relevant one year statutory period)

---

[8] "On average, over the period from July 6 to August 10, 2005, Webster imposed a fee for only 22.5% of non-Webster cardholder transactions performed at Webster ATMs in Massachusetts."  Memoranda, page 6, ¶2.

[9] As defined by Webster's Dictionary - no pun intended, one assumes.

[10] In the never ending debate of what "is" is, only the American Heritage Dictionary is quoted by Webster Bank.

[11] Perhaps filling the vacancy created by the sudden change of heart of Washington Mutual Inc.  *See,* Reuters Article dated 9, 2005 "Washington Mutual ends free ATM use for All. msnbc.msn.com/id/9979563/

[12] Declaration of Stephen F. Russell at pages 5 ¶ 15.

should not have been forced to speculate or guess whether a fee was going to be charged when they first inserted their card in the ATM. Providing notice of the assessment of a usage fee in the bottom of the ninth inning[13] of the cash withdrawal process does not comport with the notice provisions both contemplated and mandated by the EFTA.

**B.**     **Webster Bank Overstates the Proposed Federal Reserve Clarification of Regulation E**

The proposed Federal Reserve Board Rule E revisions which Webster Bank discusses (but does not attach)[14] to the Memoranda, were originally issued for comment in 1997, updated in 2004 and reissued again this past August. When one carefully reads the entire Federal Reserve package,

---

[13] Though not critical to a resolution of the legal issues presented, Webster intentionally obscures the facts by deceptively suggesting that their on screen notice alerting the consumer to the assessment of a fee somehow complements and cures their admitted failure to comply with the plain language of the statute. Webster states " If a fee applies to the transaction, the Webster ATM will **immediately** display a second written notice on the screen of the ATM ( the Screen Notice)...Declaration of Stephen F. Russell at pages 4 ¶ 11 ( emphasis added). Webster further describes it's on screen notice of a possible fee assessment as "**instantaneous"** occurring "**within seconds"** after the transaction is initiated. See Memoranda, at page 11 ¶3. These statements are absolutely untrue and sanctionable, utilized in dire desperation to create a somehow favorable record. The on screen notice is not immediate, not instantaneous and does not appear immediately after a user places his card in the machine! In fact the notice appears **after** (1) the consumer has first viewed a screen requiring a language selection from a list of six possibilities, (2) has viewed a screen asking if a receipt is being requested, (3 ) has viewed yet another screen and entered a security access code, (4) has viewed another screen and chosen the nature of the EFT from a list of three (inquiry-transfer-withdrawal), (5) has viewed another screen and chosen the source of the potential withdrawal ( choice between checking or savings), and (6) finally has viewed another screen and entered the amount of the cash to be withdrawn and confirmed that the amount is correct. The notice regarding the imposition of the fee appears "immediately and instantaneously" at the conclusion of the 6 hurdles referenced above ( or more appropriately characterized at the very end of the transaction, the proverbial end of the game). See Affidavit of Christopher M. Lefebvre.

[14] A copy of the actual August 19, 2005 Federal Reserve Release is attached hereto for the Court's convenient reference as Exhibit A to Declaration of Christopher M. Lefebvre.

of August 19, 2005, including the "Section-by-Section Analysis of the Proposed Revisions,"  it becomes clear that industry commentators have tried for years to propose revisions that attempt to defeat the purpose of the notice requirements under the EFTA.  Fortunately, to date these efforts have been unsuccessful.[15]

The proposed revisions to Regulation E, however, relate to far broader situations than that suggested by Webster Bank in its Memoranda.  As the actual language of the revisions show, a wider world of electronic services is envisioned, including balance inquiries, transfer services and the traditional cash withdrawals.  The proposed comments clearly identify situations where a bank might charge for one type of service (i.e. a balance inquiry) but <u>not</u> for another (i.e. a transfer) and therefore the use of the term "will charge a fee" might be misleading.  The proposed revisions attempt to address this issue where a bank's signage references multiple EFTA services.

Not surprisingly Webster Bank has conveniently ignored this crucial distinction.  Webster admits that it <u>does not charge</u> non customers for balance transfers and or balance inquiries! Declaration of Stephen F. Russell at page 2 ¶ 7.  Hence the concerns raised by the banking industry as referenced in the proposed revisions to the commentary would not apply to Webster. Each and every "Placard Sign" at issue in <u>this case</u> deals with a notice involving a limited and or specific service, "cash withdrawal or cash advance."  Unlike the situations referenced in the proposed revisions to Regulation E, Webster Bank is ***<u>not</u>*** dealing with multiple transaction types which may or may not result in a fee depending upon the service elected by the consumer.  The importance of this point is illustrated and clearly evident in the "Section-by-Section Analysis of the Proposed

---

[15]  Also attached as Exhibit B to the declaration of Christopher M. Lefebvre are the National Consumer Law Center's (NACA) comments on the proposed revisions to Regulation E, which raise a number of consumer concerns.

Revisions" where it states that:

> As proposed, section 205.16(b) would be revised to explicitly clarify that ATM operators may disclose in all cases that a fee will be imposed , or in the alternative, disclose that a fee may be imposed on consumers initiating an EFT or a balance inquiry if there are circumstances under which some consumers would not be charged for such services.

In this case, Webster Bank's notices specifically refer only to cash withdrawals and Plaintiff has alleged that Webster Bank knows in advance the "ascertainable circumstances" when it imposes a charge on non-customers for such cash withdrawals. Indeed, by Webster Bank's own admissions, the circumstances in which fees are charged for a cash withdrawal are extremely limited and easily identified. Finally the proposed revisions to Regulation E on which Webster Bank depends have not been formally adopted and therefore are not necessarily binding upon the Court.

## C.  The M.G.L. c.93A Demand Letter was not Defective on its Face.

Massachusetts law prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. Laws ch. 93A, § 2(a). The Attorney General of Massachusetts is authorized to issue regulations to enforce this prohibition.  Mass. Gen. Laws ch. 93A, § 2(c); see also Purity Supreme, Inc., v. Attorney Gen., 380 Mass. 762, 407 N.E.2d 297, 299 (1980) (holding that such regulations are "valid exercise[s] of the Attorney General's power under G.L. c. 93A, § 2(c), with the force of law normally accorded to an agency's regulation"). The regulation relevant in this case, 940 C.M.R. 3.16(4), states that violation of "Federal consumer protection statutes" constitutes a per se violation of Chapter 93A, § 2(a).   The EFTA is a consumer rights statute. See, Wachter v. Denver Nat'l Bank, 751 F.Supp. 906, 908 (D.Colo.1990)("The Act was designed to create rights for consumers in an era in which banking could be conducted almost exclusively

through machines. S.Rep. No. 915, 95th Cong., 2d Sess. at 3, reprinted in 1978 U.S.Code Cong. & Admin.News at 9273, 9405.")  Webster Bank's liability under M.G.L. c. 93A will therefore turn upon whether this Court determines that a violation of the EFTA has occurred.

Contrary to Webster Bank's allegations, the demand letter here satisfied the M.G.L. c. 93A "notice requirements," as the cases cited in the Memoranda itself establish.  In <u>Whyte v. Connecticut Mutual Life Insurance Co.</u>, 818 F.2d 1005 (1st Cir.1987), Mrs. Whyte's demand letter listed several statutory violations and included copies of the relevant parts of the statutes with respect to those violations, but failed to mention the specific statutory section later invoked in the litigation.  Here, both M.G.L. c. 93A and the EFTA were specifically cited.  In <u>Neuhoff v. Marvin Lumber and Cedar Co.</u>, 370 F.3d 197 (1st Cir.2004), a 93A letter which demanded relief "regarding your unfair or deceptive act or practice of selling defective windows" was held not to extend to wrongful conduct post-installation. Webster was clearly put on notice of the 93A claim <u>before</u> the amended complaint raising said allegation was filed with the Court and served upon them.  Accordingly the 93A claim is not defective.

<u>**CONCLUSION**</u>

For the reasons stated above, this Court should deny defendant's Motion for Summary Judgment and sua sponte grant Summary Judgment in favor of the Plaintiff.

/s/<u>Christopher M. Lefebvre</u>
CLAUDE LEFEBVRE, P.C.
PO Box 479
Pawtucket, RI  02862
(401) 728-6060
(401) 728-6534 (FAX)
B.B.O. # 629056

11

## **CERTIFICATION**

I hereby certify that a copy of the Plaintiff's Objection to Motion for Summary Judgment was electronically filed and served on November 21, 2005 to:

Hobart F. Popick, Esq.
Day, Berry & Howard LLP
One International Place
Boston, MA 02110                                    /s/Sarita Sasa

S:\WPFILES\EFTA CASES\Webster\FinalResponse to Motion for Summary Judgement.wpd

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| RAYMOND MORRISSEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **CA No. 05-10984-WGY** |
| v. | ) | |
| | ) | |
| WEBSTER BANK, N.A., | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S STATEMENT OF DISPUTED MATERIAL FACTS AS TO WHICH
THERE IS A GENUINE ISSUE TO BE TRIED**

Pursuant to Fed. R. Civ. P. 56 ( c) and Local Rule 56.1, Plaintiff Raymond Morrissey hereby submits its Statement of Disputed Material Facts As To Which There Is A Genuine Issue To Be Tried in opposition to the Defendant's Motion for Summary Judgment filed herewith.

1. Webster's on-screen notice regarding the imposition of fees assessed to certain non-Webster customers does not appear immediately and instantaneously after the ATM withdrawal is initiated as suggested in paragraph 9 of Defendant's Statement of Undisputed Facts.

2. Plaintiff objects and disputes the statement contained in paragraph 7 of Defendant's Statement of Undisputed Facts that the various categories of transactions where Webster does not charge a fee "may change from time to time" . Plaintiff reserves the right to initiate discovery on this issue.

Respectfully submitted,

/s/Christopher M. Lefebvre

1

CLAUDE LEFEBVRE, P.C.
PO Box 479
Pawtucket, RI  02862
(401) 728-6060
(401) 728-6534 (FAX)
B.B.O. # 629056


**<u>CERTIFICATION</u>**


I hereby certify that a copy of the Plaintiff's statement of disputed material facts as to which is a genuine issue to be tried was electronically filed and served on November 21, 2005 to:

Hobart F. Popick, Esq.
Day, Berry & Howard LLP
One International Place
Boston, MA 02110                              <u>/s/Sarita Sasa</u>

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

RAYMOND MORRISSEY,                )
                                  )
                Plaintiff,        )
                                  )          **CA No. 05-10984-WGY**
        v.                        )
                                  )
WEBSTER BANK, N.A.,               )
                                  )
                Defendant.        )

## DECLARATION OF CHRISTOPHER M. LEFEBVRE

I, Christopher M. Lefebvre, hereby depose and say as follows:

1. I am a resident of the State of Rhode Island. I am over the age of 18 and believe in the obligations of an oath.

2. I am an attorney and a principal in the Office of Claude Lefebvre and Christopher M. Lefebvre, P.C., Two Dexter Street, Pawtucket, Rhode Island, 02860. I represent the Plaintiff, Raymond Morrissey and the putative class that he seeks to represent in this matter.

3. This affidavit is made in support of and submitted in conjunction with Plaintiff's Response to Defendant Webster Bank, N.A.'s Motion for Summary Judgment. As referenced in Exhibit C, this declaration is filed to dispute the reference of the word "immediately" contained in Defendant's Undisputed Statement of Facts.

4. The attachments hereto consist of one Press Release, Comments in response to Press Release and an affidavit.

5. The document attached hereto as Exhibit A is a Proposed Amendment to Regulation E, Press Release filed by the Federal Reserve dated August 19, 2005 that I have obtained via

1

Internet.

6. The document attached hereto as <u>Exhibit B</u> are Comments of the National Consumer Law Center and Consumer Union in response to the Proposed Amendment to Regulation E and Official Staff Commentary regarding Disclosure Obligation of ATM Operators written by Margot Saunders of the National Consumer Law Center and Gail Hillebrand of Consumers Union, which I obtained directly from attorney, Margot Saunders.

7. The document attached hereto as <u>Exhibit C</u> is an affidavit prepared by me, attorney Christopher M. Lefebvre in response to the declaration of Stephen F. Russell and the statement made by the Defendant, Webster Bank, N.A. in its memoranda concerning the timing and placement of the on-screen notice utilized by Webster Bank.

ON THIS 21ST DAY OF NOVEMBER, 2005, I CHRISTOPHER M. LEFEBVRE, HEREBY DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

/s/<u>Christopher M. Lefebvre</u>
Christopher M. Lefebvre

## CERTIFICATION

I hereby certify that a copy of the Declaration of Christopher M. Lefebvre was electronically filed and served on November 21, 2005 to:

Hobart F. Popick, Esq.
Day, Berry & Howard LLP
One International Place
Boston, MA 02110                    /s/Sarita Sasa

Exhibit A

Federal Reserve Release 

# Press Release

*Release Date: August 19, 2005*

For immediate release

The Federal Reserve Board on Friday published proposed amendments to Regulation E, which implements the Electronic Fund Transfer Act, and to the regulation's official staff commentary that clarify the disclosure obligations of automated teller machine (ATM) operators with respect to fees imposed on a consumer for initiating an electronic fund transfer or a balance inquiry at an ATM. The commentary interprets the requirements of Regulation E to facilitate compliance primarily by financial institutions that offer electronic fund transfer services to consumers.

Currently, the regulation provides that an ATM operator that charges a fee for initiating an electronic fund transfer or balance inquiry must post notices at ATMs that a fee will be imposed. The proposed revisions would clarify the intent of the rule that ATM operators can satisfy the requirement by providing a notice that a fee "may" be imposed if there are circumstances under which some consumers would not be charged for services. ATM operators must continue to provide the consumer with a separate notice, either on the screen of the ATM or on paper, that a fee will be imposed and the amount of the fee, before the consumer is committed to paying a fee.

The Board is continuing to consider other issues that were addressed in its proposed September 2004 update to Regulation E.

The Federal Register notice is attached. Comments are due on or before October 7, 2005.

Attachment (176 KB PDF)

2005 Banking and consumer regulatory policy

Home | News and events
Accessibility
**Last update: August 19. 2005**

**FEDERAL RESERVE SYSTEM**

**12 CFR Part 205**

**[Regulation E; Docket No. R-1234]**

**Electronic Fund Transfers**

**AGENCY:** Board of Governors of the Federal Reserve System.

**ACTION:** Proposed rule; official staff interpretation.

---

**SUMMARY:** The Board is publishing for comment a proposal to amend Regulation E, which implements the Electronic Fund Transfer Act (EFTA). The proposal would also revise the official staff commentary to the regulation. The commentary interprets the requirements of Regulation E to facilitate compliance primarily by financial institutions that offer electronic fund transfer services to consumers.

The proposed revisions would clarify the disclosure obligations of automated teller machine (ATM) operators with respect to fees imposed on a consumer for initiating an electronic fund transfer or a balance inquiry at an ATM. The Board is withdrawing previously proposed revisions to the Regulation E staff commentary that would have addressed this issue.

**DATES:** Comments must be received on or before October 7, 2005.

**ADDRESSES:** You may submit comments, identified by Docket No. R-1234, by any of the following methods:

- Agency Web Site: http://www.federalreserve.gov. Follow the instructions for submitting comments at http://www.federalreserve.gov/generalinfo/foia/ProposedRegs.cfm.

- Federal eRulemaking Portal: http://www.regulations.gov. Follow the instructions for submitting comments.

- E-mail: regs.comments@federalreserve.gov. Include docket number in the subject line of the message.

- FAX: 202/452-3819 or 202/452-3102.

- Mail: Jennifer J. Johnson, Secretary, Board of Governors of the Federal Reserve System, 20th Street and Constitution Avenue, N.W., Washington, DC 20551.

All public comments are available from the Board's web site at
www.federalreserve.gov/generalinfo/foia/ProposedRegs.cfm as submitted, unless modified for
technical reasons. Accordingly, your comments will not be edited to remove any identifying or
contact information. Public comments may also be viewed electronically or in paper in Room
MP-500 of the Board's Martin Building (20th and C Streets, N.W.) between 9:00 a.m. and 5:00
p.m. on weekdays.

**FOR FURTHER INFORMATION CONTACT:** Ky Tran-Trong, Senior Attorney, or Daniel
G. Lonergan, David A. Stein, Natalie E. Taylor or John C. Wood, Counsels, Division of
Consumer and Community Affairs, Board of Governors of the Federal Reserve System,
Washington, D.C. 20551, at (202) 452-2412 or (202) 452-3667. For users of
Telecommunications Device for the Deaf (TDD) only, contact (202) 263-4869.

**SUPPLEMENTARY INFORMATION:**

**I. Background**

The Electronic Fund Transfer Act (EFTA or Act) (15 U.S.C. 1693 et seq.), enacted in
1978, establishes the rights, liabilities, and responsibilities of participants in electronic fund
transfer (EFT) systems. The Board's Regulation E (12 CFR part 205) implements the EFTA.
Examples of types of transfers covered by the Act and regulation include transfers initiated
through an automated teller machine (ATM), point-of-sale (POS) terminal, automated
clearinghouse (ACH), telephone bill-payment plan, or remote banking service. The Act and
regulation require disclosure of terms and conditions of an EFT service; documentation of
electronic transfers by means of terminal receipts and periodic account activity statements;
limitations on consumer liability for unauthorized transfers; procedures for error resolution; and
certain rights related to preauthorized EFTs.

The Official Staff Commentary (12 CFR part 205 (Supp. I)) is designed to facilitate
compliance and provide protection from liability under sections 915 and 916 of the EFTA for
financial institutions and persons subject to the Act. 15 U.S.C. 1593m(d)(1). The commentary
is updated periodically, as necessary, to address significant questions that arise.

**II. Summary of Proposed Revisions**

Section 205.16 provides that an ATM operator that imposes a fee on a consumer for
initiating an EFT or a balance inquiry must post notices at ATMs that a fee will be imposed.
Section 205.16(b) would be revised to clarify the operation of the ATM signage rule when fees
are not imposed by the ATM operator on all consumers. The revised language specifically
clarifies the intent of the rule that ATM operators may provide a notice that a fee may be
imposed if there are circumstances in which an ATM fee will not be charged for a particular
transaction, such as where the card has been issued by a foreign bank or the card issuer has
entered into a contractual relationship with the ATM operator regarding surcharges.

Section 205.16 does not require that any sign be posted if no fee is charged to the
consumer by the ATM operator. The rule is intended to allow consumers to identify

2

immediately ATMs that generally charge a fee for use. It is not intended to represent a complete disclosure to the consumer regarding the fees associated with the particular type of transaction the consumer seeks to conduct. Rather, a more detailed disclosure of whether in fact a fee will be charged for the type of transaction contemplated by the consumer and the amount of the fee is required to be made either on the ATM screen or on an ATM receipt before the transaction is completed. See § 205.16(c).

### III.  Section-by-Section Analysis of the Proposed Revisions

### Section 205.16 Disclosures at Automated Teller Machines

Under section 904(d) of the EFTA, as amended by the Gramm-Leach-Bliley Act of 1999 (GLB Act), an ATM operator that imposes a fee on any consumer for providing EFT services is required to provide notice of the fee to the consumer in a prominent and conspicuous location on or at the ATM on which the EFT is initiated.[1]  An ATM operator is any person who operates an ATM at which consumers initiate an EFT or a balance inquiry, and that does not hold the account to or from which the transfer is made, or about which an inquiry is made. See EFTA
§ 904(d)(3)(D)(i); § 205.16(a).  In addition to posting notice of the fee on or at the ATM, the ATM operator must also disclose that a fee will be imposed and the amount of the fee, either on the screen of the ATM or on a paper notice, before the consumer is committed to completing the transaction.  These requirements are implemented in § 205.16 of Regulation E.  See 66 FR 13409 (March 6, 2001).

Several large institutions have asked whether it is permissible under § 205.16 to provide notice on the ATM that a fee "may be" charged for providing EFT services, because many ATM operators, in particular those owned or operated by banks, apply ATM surcharges to some categories of their ATM users, but not others.  For example, an ATM operator might not charge a fee to cardholders of foreign banks, cardholders whose card issuer has entered into a special contractual relationship with the ATM operator with respect to surcharges, and persons who carry cards that are issued under electronic benefit transfer governmental programs. (While many financial institutions do not impose ATM surcharges on their own cardholders, they are not ATM operators with respect to those cardholders for purposes of § 205.16 because the institutions hold the cardholders' accounts.)  Also, an ATM operator might charge a fee for cash withdrawals, but not for balance inquiries.  As a result, a disclosure on the ATM that a fee "will" be imposed in all instances could be overly broad with respect to consumers who would not be assessed a fee for usage of the ATM.

In September 2004, as part of an update to Regulation E, the Board proposed to revise comment 205.16(b)(1)-1 to clarify that ATM operators may disclose on the ATM signage that a fee may be imposed or may specify the type of EFTs or consumers for which a fee is imposed, if there are circumstances in which an ATM surcharge will not be charged for a particular transaction. See 69 FR 55996, 56005 (September 17, 2004). The Board's proposal

---

[1]  Pub. L. No. 106-102, § 702, 113 Stat. 1338, 1463-64 (1999).

acknowledged that a strict requirement to post a notice that a fee will be imposed in all instances could result in an inaccurate disclosure of the ATM operators' surcharge practices and is not mandated by the current language in § 205.16.

Industry commenters overwhelmingly agreed with the Board's proposal, stating that the proposed staff commentary was consistent with sections 904(d)(3)(A) and (B) of the EFTA, and would help ATM operators more accurately disclose their surcharging practices. Industry commenters cited a press release issued by the original act's sponsor, Rep. Marge Roukema, stating that the act "simply puts existing practice into law."[2] According to these commenters, the common practice of many banks at the time of the ATM surcharge amendments was to state that a fee may be imposed.

Consumer groups believed that a general statement on ATM signage that a fee "may" be imposed could significantly weaken consumer notice, and that the current staff commentary permitting ATM operators to specify the type of EFTs for which a fee is imposed provides sufficient flexibility to address concerns about overbroad ATM signage disclosures. A consumer rights attorney stated that a disclosure that an ATM fee "may" be imposed is too general to be useful, and further asserted that the Congress intended that ATM signs must state that a fee will be charged whenever there is a possibility that a surcharge will be imposed on any consumer. This commenter believed that section 904(d) of the EFTA did not provide a basis for ATM operators to avoid providing notice on ATM signage to consumers to whom a fee would be imposed even if some consumers would not have a fee imposed or if there are other transactions for which a fee would not be imposed. The commenter also challenged industry commenters' characterizations regarding common industry practice at the time the amendments were adopted, stating that existing practice of many ATM operators at the time was to post signs on the machines stating that a fee will be imposed for cash withdrawals.

The Board continues to believe that a literal interpretation of the current rule could lead to overly broad disclosures of an ATM operator's surcharge practices where some consumers would not be assessed a fee for usage of the ATM, and that a reasonable interpretation of the statute and regulation would allow ATM operators to provide an alternative disclosure that a fee "may" be imposed to avoid potential consumer confusion. Upon further analysis and after consideration of the comments received, however, the Board believes it would be appropriate to make this clarification in the regulation rather than in the commentary. Therefore, the Board is withdrawing its proposed commentary revisions addressing this issue and is instead proposing to exercise its authority under § 904(a) of the EFTA to amend both the regulation and the commentary. A re-proposal allows the Board to elicit additional comments to better understand ATM disclosure practices, both at the time of the passage of the GLB Act and currently.

As proposed, § 205.16(b) would be revised to explicitly clarify that ATM operators may disclose in all cases that a fee will be imposed, or in the alternative, disclose that a fee may be imposed on consumers initiating an EFT or a balance inquiry if there are circumstances under which some consumers would not be charged for such services. Before an ATM operator may

---

[2] Banking Committee OKs Roukema ATM Fee Disclosure (March 10, 1999), http://financialservices.house.gov/banking/31099rou.htm.

4

impose an ATM fee on a consumer for initiating an electronic fund transfer or a balance inquiry, the ATM operator must provide to the consumer notice, either on-screen or via paper receipt, that an ATM fee will be imposed and the amount of the fee, and the consumer must elect to continue the transaction or inquiry after receiving such notice.  See § 205.16(e). Comment 16(b)(1)-1 would be revised to reflect the proposed rule, and to clarify that ATM operators that impose an ATM surcharge in all cases must provide notice on the ATM signage that a fee will be charged.

Comment is solicited on the current disclosure practices of ATM operators that impose surcharges on some, but not all, consumers.  Under what types of circumstances might an ATM operator not impose a surcharge for providing electronic transfer services or responding to balance inquiries?  If surcharges are not imposed on all consumers, how do ATM operators disclose their surcharge practices?  What adverse impact on consumers, if any, might result from a disclosure that states that an ATM surcharge will be imposed when the operator's practice is not to impose a surcharge on certain consumers?  Conversely, what adverse impact on consumers who are charged an ATM fee, if any, might result if ATM signage states that a fee may be imposed?  In addition, comment is solicited on disclosure practices of ATM operators with respect to surcharges at the time the GLB Act was passed.

## IV. Form of Comment Letters

Comment letters should refer to Docket No. R-1234 and, when possible, should use a standard typeface with a font size of 10 or 12; this will enable the Board to convert text submitted in paper form to machine-readable form through electronic scanning, and will facilitate automated retrieval of comments for review.  Comments may be mailed electronically to regs.comments@federalreserve.gov.

## V. Solicitation of Comments Regarding the Use of "Plain Language"

Section 722 of the Gramm-Leach-Bliley Act of 1999 requires the Board to use "plain language" in all proposed and final rules published after January 1, 2000.  The Board invites comments on whether the proposed rules are clearly stated and effectively organized, and how the Board might make the proposed text easier to understand.

## VI. Initial Regulatory Flexibility Analysis

In accordance with section 3(a) of the Regulatory Flexibility Act, the Board has reviewed the proposed amendments to Regulation E.  A final regulatory flexibility analysis will be conducted after consideration of comments received during the public comment period.

1. Statement of the objectives of the proposal.  The Board is proposing revisions to Regulation E to allow ATM operators flexibility to disclose that ATM surcharges will or may be imposed on consumers initiating an EFT or a balance inquiry when there are circumstances under which such surcharges will not be charged.

The EFTA was enacted to provide a basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund transfer systems.  The primary objective

of the EFTA is the provision of individual consumer rights. 15 U.S.C. 1693. The EFTA and Regulation E require disclosure of terms and conditions of an EFT service; documentation of electronic transfers by means of terminal receipts and periodic statements; limitations on consumer liability for unauthorized transfers; procedures for error resolution; and certain rights related to preauthorized EFTs. The Act and regulation also prescribe restrictions on the unsolicited issuance of ATM cards and other access devices. The EFTA authorizes the Board to prescribe regulations to carry out the purpose and provisions of the statute. 15 U.S.C. 1693b(a). The Act expressly states that the Board's regulations may contain "such classifications, differentiations, or other provisions, . . . as, in the judgment of the Board, are necessary or proper to carry out the purposes of [the Act], to prevent circumvention or evasion [of the act], or to facilitate compliance [with the Act]." 15 U.S.C. 1693b(c). The Act also states that "[i]f electronic fund transfer services are made available to consumers by a person other than a financial institution holding a consumer's account, the Board shall by regulation assure that the disclosures, protections, responsibilities, and remedies created by [the Act] are made applicable to such persons and services." 15 U.S.C. 1693b(d). The Board believes that the proposed revisions to Regulation E discussed above are within the Congress' broad grant of authority to the Board to adopt provisions that carry out the purposes of the statute.

2. <u>Small entities affected by the proposal</u>. The number of small entities affected by this proposal is unknown. ATM operators that do not impose ATM surcharges in all instances would be permitted to disclose that surcharges may be disclosed on signage appearing on ATMs. ATM operators that choose to make the proposed alternative disclosure may have to revise their signs on their ATMs.

3. <u>Other federal rules</u>. The Board believes no federal rules duplicate, overlap, or conflict with the proposed revisions to Regulation E.

4. <u>Significant alternatives to the proposed revisions</u>. The Board welcomes comment on any significant alternatives that would minimize the impact of the proposed rule on small entities.

## VII. Paperwork Reduction Act

In accordance with the Paperwork Reduction Act (PRA) of 1995 (44 U.S.C. 3506; 5 CFR 1320 Appendix A.1), the Board reviewed the proposed rule under the authority delegated to the Board by the Office of Management and Budget (OMB). The proposed rule contains requirements subject to the PRA. The collection of information that is required by this proposed rule is found in 12 CFR 205.16(c) and in Appendix A. The Federal Reserve may not conduct or sponsor, and an organization is not required to respond to, this information collection unless it displays a currently valid OMB control number. The OMB control number is 7100-0200. This information is required to obtain a benefit for consumers and is mandatory (15 U.S.C. 1693 <u>et seq</u>.). The respondents/recordkeepers are for-profit financial institutions, including small businesses. Institutions are required to retain records for 24 months.

All depository institutions, of which there are approximately 19,300, potentially are affected by this collection of information because all depository institutions are potential ATM

operators subject to Regulation E and are required to provide notice to consumers of an ATM surcharge, and thus are respondents for purposes of the PRA. However, the extent to which this collection of information affects a particular depository institution depends on the number of ATMs an institution operates.

The proposed revision is not expected to significantly increase the ongoing annual burden of Regulation E; rather this would be a one-time burden increase for those institutions that, although not required, decide to revise their ATM signage disclosures. For purposes of the PRA, the Federal Reserve estimates that it would take depository institutions, on average, 8 hours (one business day) to revise and update ATM signage; therefore, the Federal Reserve estimates that the total annual burden for all depository institutions for this requirement would be 154,400 hours. With respect to the 1,289 Federal Reserve-regulated institutions which must comply with Regulation E, it is estimated that the total annual burden for this requirement would be 10,312 hours.

The preceding estimate represents an average across all respondents and reflect variations between institutions based on their size, complexity, and practices. The other federal agencies are responsible for estimating and reporting to OMB the total paperwork burden for the institutions for which they have administrative enforcement authority. They may, but are not required to, use the Federal Reserve's burden estimates.

Because the records would be maintained at state member banks and the notices are not provided to the Federal Reserve, no issue of confidentiality arises under the Freedom of Information Act.

Comments are invited on: a. whether the proposed collection of information is necessary for the proper performance of the Federal Reserve's functions; including whether the information has practical utility; b. the accuracy of the Federal Reserve's estimate of the burden of the proposed information collection, including the cost of compliance; c. ways to enhance the quality, utility, and clarity of the information to be collected; and d. ways to minimize the burden of information collection on respondents, including through the use of automated collection techniques or other forms of information technology. Comments on the collection of information should be sent to Michelle Long, Federal Reserve Board Clearance Officer, Division of Research and Statistics, Mail Stop 41, Board of Governors of the Federal Reserve System, Washington, DC 20551, with copies of such comments sent to the Office of Management and Budget, Paperwork Reduction Project (7100-0200), Washington, DC 20503.

## Text of Proposed Revisions

Certain conventions have been used to highlight the proposed changes to the text of the regulation and staff commentary. New language is shown inside bold-faced arrows, while language that would be deleted is set off with bold-faced brackets. Comments are numbered to comply with **Federal Register** publication rules.

## List of Subjects in 12 CFR Part 205

Consumer protection, Electronic fund transfers, Federal Reserve System, Reporting and recordkeeping requirements.

For the reasons set forth in the preamble, the Board proposes to amend 12 CFR part 205 and the Official Staff Commentary, as follows:

## PART 205 – ELECTRONIC FUND TRANSFERS (REGULATION E)

1. The authority citation for part 205 would continue to read as follows:

**Authority**: 15 U.S.C. 1693b.

2. Section 205.16 would be amended by republishing paragraph (b) and revising paragraph (c)(1) as follows:

### § 205.16 Disclosures on Automated Teller Machines

\* \* \* \* \*

(b) <u>General</u>. An automated teller machine operator that imposes a fee on a consumer for initiating an electronic fund transfer or a balance inquiry shall –

(1) provide notice that a fee will be imposed for providing electronic fund transfer services or a balance inquiry; and

(2) disclose the amount of the fee.

(c) <u>Notice requirement</u>. An automated teller machine operator must comply with the following:

(1) <u>On the machine</u>. Post [the notice required by paragraph (b)(1) of this section] in a prominent and conspicuous location on or at the automated teller machine▶ a notice that:

(i) A fee will be imposed for providing electronic fund transfer services or a balance inquiry; or

(ii) A fee may be imposed for providing electronic fund transfer services or a balance inquiry, but this notice may be substituted only if there are circumstances under which a fee will not be imposed for such services◀; and

(2) <u>Screen or paper notice</u>. Provide the notice required by paragraphs (b)(1) and (b)(2) of this section either by showing it on the screen of the automated teller machine or by providing it on paper, before the consumer is committed to paying a fee.

2. In Supplement I to Part 205, under <u>Section 205.16 – Disclosures at Automated Teller Machines</u>, under <u>16(b) General</u>, under Paragraph 16(b)(1), paragraph 1. would be revised.

8

**SUPPLEMENT I TO PART 205 – OFFICIAL STAFF INTERPRETATIONS**

* * * * *

Section 205.16 – Disclosures on Automated Teller Machines

1. <u>Specific notices.</u>  An ATM operator that imposes a fee for a specific type of transaction ▶ -- ◀ such as ▶ for ◀ a cash withdrawal, but not ▶ for ◀ a balance inquiry, ▶ or for some cash withdrawals (such as where the card was issued by a foreign bank or by a card issuer that has entered into a special contractual relationship with the ATM operator regarding surcharges), but not for others -- ◀ may provide a general [statement] ▶ notice on or at the ATM machine ◀ that a fee will ▶ or may ◀ be imposed for providing EFT services or may specify the type of EFT for which a fee is imposed.  ▶  If, however, a fee will be imposed in all instances, the notice must state that a fee will be imposed. ◀

* * * * *

By order of the Board of Governors of the Federal Reserve System, August 19, 2005.

<u>Robert deV. Frierson   (signed)</u>
Robert deV. Frierson
Deputy Secretary of the Board

# Exhibit B

Comments of the

National Consumer Law Center
(On behalf of its Low-Income Clients)
and
Consumers Union
Consumer Federation of America
Docket No. R-1234
Proposed Amendment to Regulation E
and
Official Staff Commentary
Regarding
Disclosure Obligations of ATM Operators

These comments[1] are submitted by the **National Consumer Law Center** (on behalf of its low income clients),[2] **Consumers Union**[3] and **Consumer Federation of America,**[4] regarding proposed changes to the rules for initial disclosures on ATM machines relating to fees charged to consumers who are not customers of the financial institution. This issue is relatively simple and straightforward. The Electronic Funds Transfer Act prohibits an ATM operator from charging any fee for the use of the ATM unless a notice has been placed on the machine of "the fact that a

---

[1] Written by Margot Saunders of the National Consumer Law Center and Gail Hillebrand of Consumers Union.

[2] The **National Consumer Law Center**, Inc. (NCLC) is a non-profit Massachusetts corporation, founded in 1969, specializing in low-income consumer issues, with an emphasis on consumer credit. On a daily basis, NCLC provides legal and technical consulting and assistance on consumer law issues to legal services, government, and private attorneys representing low-income consumers across the country. NCLC publishes a series of sixteen practice treatises and annual supplements on consumer laws, including Consumer Banking and Payments Law (2nd ed. 2002), as well as bimonthly newsletters on a range of topics related to consumer credit issues and low-income consumers. NCLC attorneys have written and advocated extensively on all aspects of consumer law affecting low income people, conducted training for tens of thousands of legal services and private attorneys on the law and litigation strategies to deal predatory lending and other consumer law problems, and provided extensive oral and written testimony to numerous Congressional committees on these topics. NCLC's attorneys have been closely involved with the enactment of all federal laws affecting consumer credit since the 1970s, and regularly provide comprehensive comments to the federal agencies on the regulations under these laws. Margot Saunders is co-author of the Consumer Banking and Payments Law manual.

[3] **Consumers Union**, publisher of Consumer Reports, is an independent, nonprofit testing and information gathering organizations, serving only the consumer. We are a comprehensive source of unbiased advice about products and services, personal finance, health, nutrition, and other consumer concerns. Since 1936, our mission has been to test products, inform the public, and protect consumers.

[4] **Consumer Federation of America**, is a nonprofit association of over 280 pro-consumer groups, with a combined membership of 50 million people. CFA was founded in 1968 to advance consumers' interests through research, advocacy and education.

fee *is* imposed by such operator for providing the service . . . ."[5] The analysis regarding exactly what this requires then must flow from this key requirement in the governing federal law.

We believe that the Electronic Funds Transfer Act would permit signage at the ATM machine which indicated that the fee is not charged in every instance, so long as the sign adequately informs those consumers who will be charged a fee that they *will* be charged a fee. The accommodation to those ATM operators who do not charge a fee in every instance should not swallow the essence of the requirement in the federal law – that those consumers who *will* be charged a fee be adequately notified of that fact. This analysis then leads us to propose that the general intent of the Board's proposal to allow different information to be posted at ATM machines which do not always charge fee, can be accomplished, but not in the way that the Board currently proposes. The notice that is crafted pursuant to the exception considered in this docket must be narrow and carefully crafted to ensure that the law's original intent is carried out.

The proposal made in the current docket that the signage at the ATM machine simply say that a fee "may" be imposed accomplishes the goal of the institutions to indicate that the fee is not always imposed. However, it would not comply with the federal law's requirement that consumers who will have a fee imposed be adequately notified of that fact. No consumer who reads the notice proposed in this docket would know whether they were going to be charged a fee or not from a notice that said a "fee *may* be imposed." To accomplish the explicit requirement of the Electronic Funds Transfer Act, as well as the clear intent of the Act, the notice on the ATM machine must clearly indicate to those consumers who will be charged a fee that fact.

We do not disagree with the intent of the proposed change that information indicating that some consumers will not be charged a fee should also be available. We also understand that financial institutions posting these notices do not want too long or complicated a disclosure, and we believe that too much information in a sign on the ATM machine is likely to confuse consumers and defeat the basic purpose of this disclosure. These dueling goals do not prohibit a rather simple solution, however. The proposed disclosure would simply have to be redrafted.

Because the circumstances in which fees will not be charged are generally limited – and most likely to be limited to international cardholders, or in the relatively rare circumstances when the cardholder's bank has an agreement with the ATM owner, it is important that the disclosure not create a misleading impression. A general statement – by itself using the word "may" is likely to imply a much higher likelihood of the absence of a charge than in fact will be experienced by most consumers.

We propose that the regulations governing the notice posted on the ATM machine be rewritten to clearly state these options, as follows (new language is underlined):

> 205.16 Disclosures on automated teller machines
>
> . . .
>
> (b) *General*. An automated teller machine operator that

---

[5] 15 U.S.C. 1639b(d)(3)(A)(i).

imposes a fee on a consumer for initiating an electronic fund transfer or a balance inquiry shall <u>disclose that fact and the amount of the fee, in a clear and conspicuous manner.</u>

<u>c) *On the machine whenever a fee is imposed upon all customers.* A notice must be placed in a prominent and conspicuous location on or at the automated teller machine that a fee will be imposed for providing electronic fund transfer services or a balance inquiry.</u>

<u>(d) *On the machine whenever a fee may be imposed on some customers.* A notice must be placed in a prominent and conspicuous location on or at the automated teller machine that a fee will be imposed for providing electronic fund transfer services or a balance inquiry except [as applicable] (to some cardholders of foreign banks), (cardholders whose issuer has made arrangements for a fee waiver), (cardholders issued pursuant to some governmental programs).</u>

<u>(e) *Screen or paper notice.*</u> Provide the notice required by paragraph (b)[(1) and (b)(2)] of this section either by showing it on the screen of the automated teller machine or by providing it on paper, before the consumer is committed to paying a fee.

This consideration of a change in the Regulations and Official Staff Commentary is an accommodation to those institutions who do not charge fees in all instances and want to disclose that fact. We do not want to discourage institutions from agreeing to waive ATM fees by requiring a notice that might dictate the practice of charging those fees, and we do not want the disclosure itself to be misleading, and thereby rendered meaningless. However, the underlying requirement that those customers who will be charged a fee must be notified of that fact both at the ATM machine and on the ATM screen before the consumer is committed to the transaction, must be the leading principle in the crafting of this exception. Therefore, the primary purpose of the notice on the machine must be to adequately apprise consumers of that fact – that the fee will be charged unless the customer fits into one of a specified number of categories.

Allowing the notice on the ATM machine to state that fees *may* be imposed for use of the machine, without any explanation of the circumstances under which fees will be charged completely defeats the purpose of the federal law's requirement – it does not inform consumers of those machines at which they will be charged a fee. The proposal currently in the docket would not be in compliance with the EFTA. However, the same goals can be accomplished with the language that we have proposed.

Exhibit C

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| RAYMOND MORRISSEY, | ) |
| | ) |
| Plaintiff, | ) |
| | )     **CA No. 05-10984-WGY** |
| v. | ) |
| | ) |
| WEBSTER BANK, N.A., | ) |
| | ) |
| Defendant. | ) |

<u>**AFFIDAVIT OF CHRISTOPHER M. LEFEBVRE**</u>

I, Christopher M. Lefebvre, hereby depose and state as follows:

1. I am a resident of the State of Rhode Island. I am over the age of 18 and believe in the obligations of an oath.

2. I am an attorney and a principal in the Office of Claude Lefebvre and Christopher M. Lefebvre, P.C., Two Dexter Street, Pawtucket, Rhode Island, 02860. I represent the Plaintiff, Raymond Morrissey and the putative class that he seeks to represent in this matter.

3. This affidavit is made to totally refute certain representations regarding the timing of onscreen notices provided by Webster contained in paragraph 9 of Defendant's Undisputed Statement of Facts and in it's brief in support of it's Motion for Summary Judgment.

4. Shortly after 10:00 pm on Sunday evening November 20, 2005, I drove to Seekonk Massachusetts to verify some of the representations made by Webster regarding their on screen notice concerning charges for cash withdrawals that are assessed to certain non customers. Attached to this affidavit is a receipt from a withdrawal that I made from a Webster ATM last evening.

1

5. I presently have an ATM card issued by Sovereign Bank which upon information and belief is not a member of the SUM network. As the receipt clearly indicates, I was charged a $1.50 usage fee by Webster Bank for my cash withdrawal.

6. When I first inserted my ATM card into the machine, I was immediately greeted with a screen asking me to choose between six language choices. I chose the English language and thereafter was greeted with a second screen asking me if I wanted a receipt for the transaction. When I selected yes, I was brought to another screen which asked me to input my security code. After I inputted a code and verified it's accuracy, I was brought to another screen which asked me to choose between the type of service that I was requesting. There were three choices inquiry-transfer-withdrawal. After I chose withdrawal, I was brought to yet another screen asking me to decide where the withdrawal was going to be taken from. After I chose checking from the list, I was brought to another screen which asked me to enter an amount that I was requesting to withdraw. After I inputted the $20.00 requested amount and verified the request, I was brought to a screen regarding the $1.50 charge as outlined in paragraph 9 of the Defendant's Statement of Undisputed Facts.

7. This morning at approximately 7:15 am, I traveled to a Webster ATM located on Newport Avenue in Pawtucket and repeated the entire steps referenced above. The screens were identical and presented in the same order. When the screen regarding the $1.50 charge did finally appear, I opted to terminate the transaction.

2

ON THIS 21ST DAY OF NOVEMBER, 2005, I CHRISTOPHER M. LEFEBVRE, HEREBY DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

/s/Christopher M. Lefebvre
Christopher M. Lefebvre

**CERTIFICATION**

I hereby certify that a copy of the Declaration of Christopher M. Lefebvre was electronically filed and served on November 21, 2005 to:

Hobart F. Popick, Esq.
Day, Berry & Howard LLP
One International Place
Boston, MA 02110                                    /s/Sarita Sasa

3

11/20/05   .20.05 FF003720

XXXXXXXXX11555

WEBSTER BANK N.A.
519 NEWMAN AVE
SEEKONK MA.

WD 08621              $21.50
WDL FROM CHK          $20.00
USAGE FEE              $1.50
TOTAL                $21.50

CURRENT BAL           $0.00



All transactions are subject to proof and verification.
Member FDIC