UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RAYMOND MORRISSEY, ) | |
| ) | |
| *Plaintiff,* ) | |
| ) | |
| v. ) | Civil Action No. 05-10984-WGY |
| ) | |
| WEBSTER BANK, N.A., ) | |
| ) | |
| *Defendant.* ) | |

**DEFENDANT WEBSTER BANK, N.A.'S REPLY MEMORANDUM
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

**I.   INTRODUCTION**

Plaintiff Raymond Morrissey ("Morrissey") has utterly failed to meet his burden in opposing Webster Bank, N.A. ("Webster")'s Motion for Summary Judgment and, accordingly, this Court should enter judgment in favor of Webster on all claims in this action. First, as Morrissey concedes, there is no genuine issue as to any material fact. Thus, this Court should rule on Webster's motion for summary judgment as a matter of law. Second, Webster's automated teller machine ("ATM") fee notice complied at all times with the applicable requirements of the Electronic Funds Transfer Act, 15 U.S.C. § 1693, *et seq.* (the "EFTA"), and Federal Reserve Board (the "Board") Regulation E, 12 C.F.R. § 205.16 ("Regulation E") by providing an accurate and meaningful disclosure of its ATM fees to its ATM users. Finally, because Webster is entitled to judgment as a matter of law as to Morrissey's EFTA claim, Morrissey's c. 93A claim likewise must fail.

## II. ARGUMENT

### A. Webster is entitled to judgment as a matter of law because its ATM fee notices complied at all times with the EFTA.

"[A] party contesting summary judgment must offer the court more than posturing and conclusory rhetoric." McIntosh v. Antonino, 71 F.3d 29, 33 (1st Cir. 1995) (citing cases). "This principle is brought into bold relief when the motion targets an issue on which the nonmoving party bears the ultimate burden of proof. In that circumstance, the nonmovant must produce specific facts, in suitable evidentiary form, in order to demonstrate the presence of a trialworthy issue." Id. (emphasis added ) (citations omitted). With respect to whether the placard displaying Webster's ATM fee notice, which appears on the outside of Webster's ATMs (the "Placard Notice"), complies with the EFTA, Morrissey fails to meet this burden. Accordingly, this Court should grant Webster's motion for summary judgment.[1]

#### 1. There is no issue as to any material fact.

Plaintiff's Memorandum in Opposition to Webster Bank's Motion for Summary Judgment ("Opposition") fails to identify any genuine issue of fact – material or otherwise. In Plaintiff's Statement of Disputed Material Facts As To Which There Is A Genuine Issue To Be Tried ("Plaintiff's Statement"), Morrissey purports to dispute two facts: (1) that "Webster's on-screen notice … does not appear immediately and instantaneously after the ATM withdrawal is

---

[1] The Court should likewise decline Morrissey's invitation to grant him summary judgment *sua sponte*. Although Morrissey had an opportunity to file a motion for summary judgment, he elected not to do so prior to the October 31, 2005 deadline to which he specifically consented in the Joint Statement, and which was adopted by the Court in the September 26, 2005 Scheduling Order. The Court should not reward Morrissey's attempt to play fast and loose with the Scheduling Order and, therefore, should not construe his Opposition as a timely filed motion for summary judgment. See, e.g., O'Connell v. Hyatt Hotels, 357 F.3d 152, 155 (1st Cir. 2004) ("In an era of burgeoning case loads and thronged dockets, effective case management has become an essential tool for handling civil litigation. … For Rule 16(b) to operate effectively, litigants cannot be permitted to treat a scheduling order as a frivolous piece of paper idly entered, which can be cavalierly disregarded without peril.") (citations omitted).

initiated"[2] and (2) "that the various categories of transactions where Webster does not charge a fee 'may change from time to time.'" (See Plaintiff's Statement at ¶¶ 1-2.)  Morrissey fails to point out, however, why either of these issues has any bearing on the outcome of this case.  See Robinson v. Bodoff, 355 F. Supp. 2d 578, 582 (D. Mass. 2005), quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) ("A fact is material if it 'might affect the outcome of the suit under the governing law.'")  Indeed, Morrissey himself does not appear to seriously contend that either of these issues would affect the outcome of this case given that he concedes an absence of issues of material fact in his Opposition.  (See Opposition at 3.) ("Plaintiff does not dispute the recitation of the facts and procedural background of the case as referenced in parts I and II of Webster's memorandum.")  Accordingly, these facts "will be deemed for purposes of the motion to be admitted."  See Local Rule 56.1.  Thus, there are no issues of material fact, and this court should rule upon Webster's Motion for Summary Judgment on the legal issue presented, namely, whether Webster's statement in its ATM fee notices that a fee "may" be charged to non-Webster cardholders in is compliance with the EFTA and Regulation E.

---

[2] It is true that a Webster ATM user must answer a handful of essential questions after inserting her card in a Webster ATM, including (1) selecting the language in which she wishes to conduct the transaction (to ensure that she understands what she is reading on the ATM screen), (2) entering her personal identification number (to ensure against fraud), and (3) selecting the particular transaction she wishes to perform.  Depending on how quickly the user answers the questions asked, Webster's Screen Notice does in fact appear "within seconds" (see Memorandum in Support of Webster's Motion for Summary Judgment ("Webster's Memorandum"), at 11) after she inserts her card in the machine.  Nonetheless, Morrissey fails to demonstrate or even suggest why this particular distinction is material.  The EFTA merely requires that the Screen Notice appear "before the consumer is irrevocably committed to completing the transaction."  15 U.S.C. § 1693b(d)(3)(B)(ii).  Morrissey does not contend that Webster failed to comply with this provision, (see Opposition at 3), and accordingly, Morrissey has failed to demonstrate an issue of material fact.

### 2. There is no requirement under the EFTA that Webster provide a comprehensive disclosure of its ATM fees on its Placard Notice.

Morrissey asserts in his opposition that "[s]ince Webster knows those circumstances in which it is going to charge a fee … the use of the phrase 'may charge a $1.50 fee' violates the express requirements of the EFTA." (See Opposition at 3.) Not surprisingly, Morrissey fails to cite any legal authority for this proposition. Indeed, he cannot, since the plain language of the EFTA simply requires Webster to provide notice to its ATM users of "(i) the fact that a fee <u>is</u> imposed by such operator for providing the service; and (ii) the amount of any such fee." 15 U.S.C. § 1693b(3)(A) (emphasis added). There is <u>no</u> requirement under the EFTA that Webster provide a comprehensive disclosure of all of the circumstances in which a fee is (and is <u>not</u>) assessed in its Placard Notice. Under the EFTA, Congress could have – but did not – require banks to definitively inform each individual ATM user as to the applicability of any fee <u>before he or she invested any time in the transaction</u>, as Morrissey suggests.[3] Further, if Congress had intended banks to provide a specific form of notice with respect to ATM fee disclosures, it could have given the Board the authority to issue "model clauses" for such notices as it did for the various "Terms and Conditions of Transfers" required by § 1693c of the EFTA. <u>See</u> 15 U.S.C. § 1693b(b).

That Webster is able to articulate the <u>categories</u> of customers charged a fee is analytically distinct from whether <u>as to an individual user</u> Webster is able to offer a specific disclosure regarding whether a fee will apply to that particular transaction. Indeed, whether a fee will apply

---

[3] Note 7 to Morrissey's Opposition misconstrues Webster's use of the phrase "irrevocably committed." The EFTA merely requires that an ATM operator display its Screen Notice before the user is "irrevocably committed" to completing the transaction, <u>see</u> 15 U.S.C. § 1693b(d)(3)(B)(ii), and Morrissey has acknowledged that Webster's Screen Notice complies with the EFTA in this respect. (<u>See</u> Opposition at 3) ("[T]he second Amended Complaint does not allege that Webster has violated [the] subsection of the statute [governing its Screen Notice]".)

to a particular transaction is not known (and indeed, unknowable) to Webster until the user inserts her ATM card in the Webster ATM and the card's BIN can be compared to Webster's master BIN list. (See Russell Decl. at ¶ 10.) Thus, regardless of whether the circumstances in which Webster charges a fee are "readily ascertainable," there is nothing in the EFTA that requires Webster to provide a complete recitation of those circumstances in its Placard Notice.

Moreover, if Webster were required to provide a comprehensive disclosure all of the circumstances in which a fee is (and is not) assessed, its Placard Notice would be unnecessarily complex and difficult to understand. Such a notice would require each Webster ATM user to read several paragraphs of text on a small placard describing the multiple exceptions to Webster's ATM fee policy in order to determine whether a fee will apply to his particular transaction.[4] But "[m]eaningful disclosure does not mean more disclosure. Rather, it describes a balance between competing considerations of complete disclosure and the need to avoid informational overload." Ford Motor Credit Co. v. Milhollin, 444 U.S. 555, 568 (1980) (citations and internal punctuation omitted) (emphasis in original).

---

[4] Morrissey suggests that if Webster added text to the end of its current Placard Notice stating, "This Fee Will Not Be Charged to Webster Bank Cardholders, Non-U.S. Bank Cardholders, and participating members of the SUM network [And Beneficiaries of Certain Disaster Benefit Programs]," that such a notice would comply with the EFTA. (See Opposition at 2, note 3.) Such a notice would be of little use to Webster's ATM users, however, without a listing of the banks that are "participating members of the SUM network." Furthermore, Morrissey fails to explain how a notice containing the undefined phrase "beneficiaries of certain disaster benefit programs" offers any greater clarity than Webster's current notice. Even if Webster defined the phrases "certain disaster benefit programs" and "participating members of the SUM network," however, Morrissey fails to explain how such a notice would be more useful to Webster's ATM users – or even how it would take less time for the user to understand – than the specific, individualized on-screen notice (the "Screen Notice") that Webster already provides after its users insert their cards in its ATMs. Regardless, whether Webster's Placard Notice could have been worded differently is irrelevant to the resolution of Webster's motion, because Webster's Placard Notice complied at all times with the EFTA as a matter of law.

Furthermore, such a disclosure would not further the fundamental objectives of the EFTA because it would not effectively provide customers with an understanding of their "rights, liabilities, and responsibilities … in electronic fund transfer systems." See <u>Bank of America v. City and County of San Francisco</u>, 309 F.3d 551, 564 (9th Cir. 2002), <u>quoting</u> 15 U.S.C. § 1693b. The Board clearly had these objectives in mind when it issued the proposed revisions to Regulation E, as demonstrated by its comments regarding consumer confusion resulting from overly inclusive ATM fee disclosures:

> The Board continues to believe that a <u>literal interpretation of the current rule could lead to overly broad disclosures of an ATM operator's surcharge practices</u> where some consumers would not be assessed a fee for usage of the ATM, and that <u>a reasonable interpretation of the statute and regulation would allow ATM operators to provide an alternative notice that a fee "may" be imposed to avoid potential consumer confusion.</u>

12 C.F.R. Part 205, Electronic Fund Transfers, 70 Fed. Reg. 49892 (proposed Aug. 25, 2005) (emphasis added) (the "Proposed Regulations") (attached hereto as Exhibit A).[5]

---

[5] The Official Staff Interpretations announced in the Proposed Regulations explicitly state that the Proposed Regulations are intended to address banks (such as Webster) that charge some customers a fee and not others: "Section 205.16 – Disclosures on Automated Teller Machines 1. Specific notices. <u>An ATM operator that imposes a fee</u> for a specific type of transaction – such as for a cash withdrawal, but not for a balance inquiry, or<u> for some cash withdrawals (such as where the card was issued by a foreign bank or by a card issuer that has entered into a special contractual relationship with the ATM operator regarding surcharges), but not for others</u> – may provide a general [statement] notice on or at the ATM machine that a fee will or may be imposed for providing EFT services or may specify the type of EFT for which a fee is imposed. …" 70 Fed. Reg. 49894 (emphasis added). Thus, Morrissey's assertion that Webster "ignored [the] crucial distinction" in the Proposed Regulations between banks that charge a fee for some <u>transactions</u> (as opposed to banks that charge a fee to some <u>consumers</u>) (see Opposition at 9) makes no sense.

### 3. Webster's Placard Notice and Screen Notice, taken together, provide a complete and individualized disclosure of Webster's ATM fees in accordance with the EFTA.

Under the EFTA, Webster is required to provide two forms of notice to ATM users regarding its ATM fees. The first form of notice must appear on the outside of the machine, giving notice of "the fact that a fee is imposed." 15 U.S.C. § 1693b(d)(3)(B)(i). The second form of notice must appear on the screen of the ATM after the user has commenced the transaction, but before the user is "irrevocably committed to completing the transaction,"[6] stating definitively that a fee is to be collected from that particular user and the amount of the fee. 15 U.S.C. § 1693b(d)(3)(B)(ii).

Accordingly, even though Morrissey is not challenging Webster's Screen Notice, Webster's Placard Notice and Screen Notice cannot be considered in isolation because the EFTA requires ATM operators to provide both. See 15 U.S.C. § 1693b(d)(3)(B)(i)-(ii). Webster's Placard Notice informs Webster ATM users of the possibility that a fee may be imposed. See 15 U.S.C. § 1693b(d)(3)(B)(i) (requiring notice of "the fact that a fee is imposed"); (Russell Decl. at ¶ 6.). Again, until a user inserts her card into a Webster ATM, the identity of that particular user – and whether or not a fee will apply to the transaction – is unknown (and indeed, unknowable) to Webster. Once the ATM user inserts her card, and the ATM determines what category the transaction falls into, the ATM's Screen Notice states definitively that the applicable fee will be imposed and requires the user to affirmatively assent to the fee before proceeding. (Id. at ¶¶ 10, 11.) Thus, every user of a Webster ATM will have been given specific, individualized disclosure of any fee applying to the transaction (and the user will have consented to any such fee) before the user is "irrevocably committed to completing the

---

[6] See note 3, supra.

transaction," in accordance with the requirements of the EFTA. See 15 U.S.C. § 1693b(d)(3)(B)(ii).

    **B.**    **Because Webster complied at all times with the EFTA, Morrissey's c. 93A claim must likewise fail.**

Even if Morrissey could show that he served an adequate demand letter under M.G.L. c. 93A, § 9(3), Morrissey's c. 93A claim must nonetheless fail as a matter of law because that claim is predicated on Morrissey's ability to prove that Webster violated the EFTA, which he cannot do.

    **1.**    **Morrissey's purported c. 93A demand letter is inadequate as a matter of law.**

Morrissey cannot prevail on his c. 93A claim because he failed to serve an adequate demand letter as required by M.G.L. c. 93A, § 9(3). Service of such a demand is an "absolute prerequisite to an action asserted under [c. 93A]." Ball v. Wal-Mart, Inc., 102 F. Supp. 2d 44, 54 (D. Mass. 2000) (citations omitted). Morrissey's Opposition fails to explain how his June 14, 2005 letter adequately "define[d] the injury suffered and the relief demanded in a manner that provide[d] [Webster] with an opportunity to review the facts and the law involved to see if the requested relief should be granted or denied." See Spring v. Geriatric Authority of Holyoke, 394 Mass. 274, 288 (1985). Morrissey's demand letter did not describe – specifically or otherwise – Webster's conduct that allegedly violated c. 93A. Rather, the June 14 letter simply stated that that the allegations referenced in his Complaint "violate Mass. G.L. ch. 93A." (See Letter from C. Lefebvre to H. Popick, dated June 14, 2005, attached to Webster's Memorandum as Exhibit A.)

Furthermore, Morrissey fails to distinguish the cases Webster cited in its Memorandum, which demonstrate that Morrissey served an inadequate demand letter. First, as Morrissey apparently concedes, Whyte v. Conn. Mut. Life Ins. Co., 818 F.2d 1005 (1st Cir. 1987) is

-8-

directly applicable because the court ultimately held that the plaintiff's demand letter "<u>failed to even come close</u> to meeting [the] requirements" of M.G.L. c. 93A, § 9(3). <u>Whyte</u>, 818 F.2d at 1014 (emphasis added). Thus, although Morrissey "specifically cited" "both M.G.L. c. 93A and the EFTA" (<u>see</u> Opposition, at 11), his demand letter is nonetheless defective under M.G.L. c. 93A, § 9(3), because it failed to "specifically list the deceptive practices claimed." See <u>Whyte</u>, at 1014.

In <u>Neuhoff v. Marvin Lumber and Cedar Co.</u>, 370 F.3d 197 (1st Cir., 2004), the court held that claims based on "empty promises" that defendants made to them after the sale of the allegedly defective windows in issue were barred because they were not raised in the plaintiffs' demand letter. <u>See id.</u> at 205-06. Similarly, here, aside from incorporating his Complaint (which Morrissey apparently agreed with Webster was materially lacking in specificity), Morrissey failed to provide <u>any</u> description in his June 14 letter of Webster's alleged wrongful conduct and, accordingly, his letter failed to satisfy the requirements of M.G.L. c. 93A, § 9(3).

**2.   Morrissey's c. 93A claim fails because Webster's Placard Notice complied at all times with the EFTA.**

Webster is likewise entitled to summary judgment on Morrissey's c. 93A claim because Webster's Placard Notice complies with the applicable requirements of the EFTA and Regulation E. <u>See</u> M.G.L. c. 93A, § 3 ("Nothing in [c. 93A] shall apply to transactions or actions otherwise permitted under laws as administered by any regulatory board or officer acting under statutory authority of the commonwealth or of the United States."); <u>see also</u> <u>Cablevision of Boston, Inc. v. Public Improvement Comm'n.</u>, 38 F. Supp. 2d 46, 61 (D. Mass. 1999) (defendant's conduct does not violate c. 93A if a statutory or regulatory scheme "affirmatively permits the practice which is alleged to be unfair or deceptive"). Indeed, Morrissey has conceded that he cannot prevail on his c. 93A claim without proving that Webster's Placard

Notice violated the EFTA: "Webster Bank's liability under M.G.L. c. 93A will therefore turn upon whether this Court determines that a violation of the EFTA has occurred." (See Opposition, at 11.) Because, as described above, Morrissey's EFTA claim fails as a matter of law, Morrissey's c. 93A claim must likewise fail. Webster is therefore entitled to summary judgment on Morrissey's c. 93A claim.

### III. CONCLUSION

For the foregoing reasons, as well as those presented in Webster's Memorandum in Support of its Motion for Summary Judgment, this Court should enter judgment in favor of Webster and against Morrissey on all claims in this action.

Respectfully submitted,

WEBSTER BANK, N.A.,

By its attorneys,

 /s/ Hobart F. Popick
Jonathan I. Handler (BBO # 561475)
Hobart F. Popick (BBO # 658763)
DAY, BERRY & HOWARD LLP
One International Place
Boston, Massachusetts 02110
(617) 345-4600

-and-

Steven M. Greenspan (admitted *pro hac vice*)
DAY, BERRY & HOWARD LLP
CityPlace I
Hartford, Connecticut 06103
(860) 275-0100

Dated:  December 7, 2005

**CERTIFICATE OF SERVICE**

I, Hobart F. Popick, hereby certify that on the 7th day of December, 2005, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing(s) to: Christopher M. Lefebvre, Esq., Claude Lefebvre, P.C., Two Dexter Street, Pawtucket, Rhode Island 02860.

 /s/ Hobart F. Popick
Hobart F. Popick

# EXHIBIT A

LEXSEE 70 FED REG 49891

FEDERAL REGISTER

Vol. 70, No. 164

Proposed Rules

FEDERAL RESERVE SYSTEM (FRS)

Board of Governors

**12 CFR Part 205**

**[Regulation E; Docket No. R-1234]**

**Electronic Fund Transfers**

70 FR 49891

**DATE:** Thursday, August 25, 2005

**ACTION:** Proposed rule; official staff interpretation.

**SUMMARY:** The Board is publishing for comment a proposal to amend Regulation E, which implements the Electronic Fund Transfer Act (EFTA). The proposal would also revise the official staff commentary to the regulation. The commentary interprets the requirements of Regulation E to facilitate compliance primarily by financial institutions that offer electronic fund transfer services to consumers.

The proposed revisions would clarify the disclosure obligations of automated teller machine (ATM) operators with respect to fees imposed on a consumer for initiating an electronic fund transfer or a balance inquiry at an ATM. The Board is withdrawing previously proposed revisions to the Regulation E staff commentary that would have addressed this issue.

**EFFECTIVE DATE:** Comments must be received on or before October 7, 2005.

**ADDRESSES:** You may submit comments, identified by Docket No. R-1234, by any of the following methods:

. Agency Web site: *http://www.federalreserve.gov*. Follow the instructions for submitting comments at *http://www.federalreserve.gov/generalinfo/foia/ProposedRegs.cfm*.

. Federal eRulemaking Portal: *http://www.regulations.gov*. Follow the instructions for submitting comments.

. E-mail: *regs.comments@federalreserve.gov*. Include docket number in the subject line of the message.

. FAX: 202/452-3819 or 202/452-3102.

. Mail: Jennifer J. Johnson, Secretary, Board of Governors of the Federal Reserve System, 20th Street and Constitution Avenue, NW., Washington, DC 20551.

All public comments are available from the Board's Web site at *http://www.federalreserve.gov/generalinfo/foia/ProposedRegs.cfm* as submitted, unless modified for technical reasons. Accordingly, your comments will not be edited to remove any identifying or contact information. Public comments may also be viewed electronically or in paper in Room MP-500 of the Board's Martin Building (20th and C Streets, NW.) between 9 a.m. and 5 p.m. on weekdays.

**FOR FURTHER INFORMATION CONTACT:** Ky Tran-Trong, Senior Attorney, or Daniel G. Lonergan, David A. Stein, Natalie E. Taylor or John C. Wood, Counsels, Division of Consumer and Community Affairs, Board of Governors of the Federal Reserve System, Washington, DC 20551, at (202) 452-2412 or (202) 452-3667. For users of Telecommunications Device for the Deaf (TDD) only, contact (202) 263-4869.

**SUPPLEMENTARY INFORMATION:** The Electronic Fund Transfer Act (EFTA or Act) (15 U.S.C. 1693 *et seq.*), enacted in 1978, establishes the rights, liabilities, and responsibilities of participants in electronic fund transfer (EFT) systems. The Board's Regulation E (12 CFR part 205) implements the EFTA. Examples of types of transfers covered by the Act and regulation include transfers initiated through an automated teller machine (ATM), point-of-sale (POS) terminal, automated clearinghouse (ACH), telephone bill-payment plan, or remote banking service. The Act and regulation require disclosure of terms and conditions of an EFT service; documentation of electronic transfers by means of terminal receipts and periodic account activity statements; limitations on consumer liability for unauthorized transfers; procedures for error resolution; and certain rights related to preauthorized EFTs.

The Official Staff Commentary (12 CFR part 205 (Supp. I)) is designed to facilitate compliance and provide protection from liability under sections 915 and 916 of the EFTA for financial institutions and persons subject to the Act. 15 U.S.C. 1593m(d)(1). The commentary is updated periodically, as necessary, to address significant questions that arise.

**II. Summary of Proposed Revisions**

Section 205.16 provides that an ATM operator that imposes a fee on a consumer for initiating an EFT or a balance inquiry must post notices at ATMs that a fee will be imposed. Section 205.16(b) would be revised to clarify the operation of the ATM signage rule when fees are not imposed by the ATM operator on all consumers. The revised language specifically clarifies the intent of the rule that ATM operators may provide a notice that a fee *may* be imposed if there are circumstances in which an ATM fee will not be charged for a particular transaction, such as where the card has been issued by a foreign bank or the card issuer has entered into a contractual relationship with the ATM operator regarding surcharges.

Section 205.16 does not require that any sign be posted if no fee is charged to the consumer by the ATM operator. The rule is intended to allow consumers to identify immediately ATMs that generally charge a fee for use. It is not intended to represent a complete disclosure to the consumer regarding the fees associated with the particular type of transaction the consumer seeks to conduct. Rather, a more detailed [*49892] disclosure of whether in fact a fee will be charged for the type of transaction contemplated by the consumer and the amount of the fee is required to be made either on the ATM screen or on an ATM receipt before the transaction is completed. *See* § 205.16(c).

**III. Section-by-Section Analysis of the Proposed Revisions**

*Section 205.16 Disclosures at Automated Teller Machines*

Under section 904(d) of the EFTA, as amended by the Gramm-Leach-Bliley Act of 1999 (GLB Act), an ATM operator that imposes a fee on any consumer for providing EFT services is required to provide notice of the fee to the consumer in a prominent and conspicuous location on or at the ATM on which the EFT is initiated. n1 An ATM operator is any person who operates an ATM at which consumers initiate an EFT or a balance inquiry, and that does not hold the account to or from which the transfer is made, or about which an inquiry is made. *See* EFTA 904(d)(3)(D)(i); § 205.16(a). In addition to posting notice of the fee on or at the ATM, the ATM operator must also disclose that a fee will be imposed and the amount of the fee, either on the screen of the ATM or on a paper notice, before the consumer is committed to completing the transaction. These requirements are implemented in § 205.16 of Regulation E. *See* 66 FR 13409 (March 6, 2001).

n1 Pub. L. 106-102, § 702, 113 Stat. 1338, 1463-64 (1999).

Several large institutions have asked whether it is permissible under § 205.16 to provide notice on the ATM that a fee "may be" charged for providing EFT services, because many ATM operators, in particular those owned or operated by banks, apply ATM surcharges to some categories of their ATM users, but not others. For example, an ATM operator might not charge a fee to cardholders of foreign banks, cardholders whose card issuer has entered into a special contractual relationship with the ATM operator with respect to surcharges, and persons who carry cards that are issued under electronic benefit transfer governmental programs. (While many financial institutions do not impose ATM surcharges on their own cardholders, they are not ATM operators with respect to those cardholders for purposes of § 205.16 be-

cause the institutions hold the cardholders' accounts.) Also, an ATM operator might charge a fee for cash withdrawals, but not for balance inquiries. As a result, a disclosure on the ATM that a fee "will" be imposed in all instances could be overly broad with respect to consumers who would not be assessed a fee for usage of the ATM.

In September 2004, as part of an update to Regulation E, the Board proposed to revise comment 205.16(b)(1)-1 to clarify that ATM operators may disclose on the ATM signage that a fee may be imposed or may specify the type of EFTs or consumers for which a fee is imposed, if there are circumstances in which an ATM surcharge will not be charged for a particular transaction. See 69 FR 55996, 56005 (September 17, 2004). The Board's proposal acknowledged that a strict requirement to post a notice that a fee will be imposed in all instances could result in an inaccurate disclosure of the ATM operators' surcharge practices and is not mandated by the current language in § 205.16.

Industry commenters overwhelmingly agreed with the Board's proposal, stating that the proposed staff commentary was consistent with sections 904(d)(3)(A) and (B) of the EFTA, and would help ATM operators more accurately disclose their surcharging practices. Industry commenters cited a press release issued by the original act's sponsor, Rep. Marge Roukema, stating that the act "simply puts existing practice into law." n2 According to these commenters, the common practice of many banks at the time of the ATM surcharge amendments was to state that a fee *may* be imposed.

n2 Banking Committee OKs Roukema ATM Fee Disclosure (March 10, 1999), *http://financialservices.house.gov/banking/31099rou.htm.*

Consumer groups believed that a general statement on ATM signage that a fee "may" be imposed could significantly weaken consumer notice, and that the current staff commentary permitting ATM operators to specify the type of EFTs for which a fee is imposed provides sufficient flexibility to address concerns about overbroad ATM signage disclosures. A consumer rights attorney stated that a disclosure that an ATM fee "may" be imposed is too general to be useful, and further asserted that the Congress intended that ATM signs must state that a fee will be charged whenever there is a possibility that a surcharge will be imposed on any consumer. This commenter believed that section 904(d) of the EFTA did not provide a basis for ATM operators to avoid providing notice on ATM signage to consumers to whom a fee would be imposed even if some consumers would not have a fee imposed or if there are other transactions for which a fee would not be imposed. The commenter also challenged industry commenters' characterizations regarding common industry practice at the time the amendments were adopted, stating that existing practice of many ATM operators at the time was to post signs on the machines stating that a fee *will* be imposed for cash withdrawals.

The Board continues to believe that a literal interpretation of the current rule could lead to overly broad disclosures of an ATM operator's surcharge practices where some consumers would not be assessed a fee for usage of the ATM, and that a reasonable interpretation of the statute and regulation would allow ATM operators to provide an alternative disclosure that a fee "may" be imposed to avoid potential consumer confusion. Upon further analysis and after consideration of the comments received, however, the Board believes it would be appropriate to make this clarification in the regulation rather than in the commentary. Therefore, the Board is withdrawing its proposed commentary revisions addressing this issue and is instead proposing to exercise its authority under section 904(a) of the EFTA to amend both the regulation and the commentary. A re-proposal allows the Board to elicit additional comments to better understand ATM disclosure practices, both at the time of the passage of the GLB Act and currently.

As proposed, § 205.16(b) would be revised to explicitly clarify that ATM operators may disclose in all cases that a fee will be imposed, or in the alternative, disclose that a fee may be imposed on consumers initiating an EFT or a balance inquiry if there are circumstances under which some consumers would not be charged for such services. Before an ATM operator may impose an ATM fee on a consumer for initiating an electronic fund transfer or a balance inquiry, the ATM operator must provide to the consumer notice, either on-screen or via paper receipt, that an ATM fee will be imposed and the amount of the fee, and the consumer must elect to continue the transaction or inquiry after receiving such notice. See § 205.16(e). Comment 16(b)(1)-1 would be revised to reflect the proposed rule, and to clarify that ATM operators that impose an ATM surcharge in all cases must provide notice on the ATM signage that a fee *will* be charged.

Comment is solicited on the current disclosure practices of ATM operators that impose surcharges on some, but not all, consumers. Under what types of circumstances might an ATM operator not impose a surcharge for providing electronic transfer services or responding to balance inquiries? If [*49893] surcharges are not imposed on all consumers, how do ATM operators disclose their surcharge practices? What adverse impact on consumers, if any, might result from a disclosure that states that an ATM surcharge will be imposed when the operator's practice is not to impose a surcharge on certain consumers? Conversely, what adverse impact on consumers who are charged an ATM fee, if any, might re-

sult if ATM signage states that a fee may be imposed? In addition, comment is solicited on disclosure practices of ATM operators with respect to surcharges at the time the GLB Act was passed.

**IV. Form of Comment Letters**

Comment letters should refer to Docket No. R-1234 and, when possible, should use a standard typeface with a font size of 10 or 12; this will enable the Board to convert text submitted in paper form to machine-readable form through electronic scanning, and will facilitate automated retrieval of comments for review. Comments may be mailed electronically to *regs.comments@federalreserve.gov*.

**V. Solicitation of Comments Regarding the Use of "Plain Language"**

Section 722 of the Gramm-Leach-Bliley Act of 1999 requires the Board to use "plain language" in all proposed and final rules published after January 1, 2000. The Board invites comments on whether the proposed rules are clearly stated and effectively organized, and how the Board might make the proposed text easier to understand.

**VI. Initial Regulatory Flexibility Analysis**

In accordance with section 3(a) of the Regulatory Flexibility Act, the Board has reviewed the proposed amendments to Regulation E. A final regulatory flexibility analysis will be conducted after consideration of comments received during the public comment period.

1. *Statement of the objectives of the proposal.* The Board is proposing revisions to Regulation E to allow ATM operators flexibility to disclose that ATM surcharges will or may be imposed on consumers initiating an EFT or a balance inquiry when there are circumstances under which such surcharges will not be charged.

The EFTA was enacted to provide a basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund transfer systems. The primary objective of the EFTA is the provision of individual consumer rights. 15 U.S.C. 1693. The EFTA and Regulation E require disclosure of terms and conditions of an EFT service; documentation of electronic transfers by means of terminal receipts and periodic statements; limitations on consumer liability for unauthorized transfers; procedures for error resolution; and certain rights related to preauthorized EFTs. The Act and regulation also prescribe restrictions on the unsolicited issuance of ATM cards and other access devices. The EFTA authorizes the Board to prescribe regulations to carry out the purpose and provisions of the statute. 15 U.S.C. 1693b(a). The Act expressly states that the Board's regulations may contain "such classifications, differentiations, or other provisions, * * * as, in the judgment of the Board, are necessary or proper to carry out the purposes of [the Act], to prevent circumvention or evasion [of the act], or to facilitate compliance [with the Act]." 15 U.S.C. 1693b(c). The Act also states that "[i]f electronic fund transfer services are made available to consumers by a person other than a financial institution holding a consumer's account, the Board shall by regulation assure that the disclosures, protections, responsibilities, and remedies created by [the Act] are made applicable to such persons and services." 15 U.S.C. 1693b(d). The Board believes that the proposed revisions to Regulation E discussed above are within the Congress' broad grant of authority to the Board to adopt provisions that carry out the purposes of the statute.

2. *Small entities affected by the proposal.* The number of small entities affected by this proposal is unknown. ATM operators that do not impose ATM surcharges in all instances would be permitted to disclose that surcharges may be disclosed on signage appearing on ATMs. ATM operators that choose to make the proposed alternative disclosure may have to revise their signs on their ATMs.

3. *Other Federal rules.* The Board believes no Federal rules duplicate, overlap, or conflict with the proposed revisions to Regulation E.

4. *Significant alternatives to the proposed revisions.* The Board welcomes comment on any significant alternatives that would minimize the impact of the proposed rule on small entities.

**VII. Paperwork Reduction Act**

In accordance with the Paperwork Reduction Act (PRA) of 1995 (44 U.S.C. 3506; 5 CFR part 1320 Appendix A.1), the Board reviewed the proposed rule under the authority delegated to the Board by the Office of Management and Budget (OMB). The proposed rule contains requirements subject to the PRA. The collection of information that is required by this proposed rule is found in 12 CFR 205.16(c) and in Appendix A. The Federal Reserve may not conduct or sponsor, and an organization is not required to respond to, this information collection unless it displays a currently valid

OMB control number. The OMB control number is 7100-0200. This information is required to obtain a benefit for consumers and is mandatory (15 U.S.C. 1693 *et seq.*). The respondents/recordkeepers are for-profit financial institutions, including small businesses. Institutions are required to retain records for 24 months.

All depository institutions, of which there are approximately 19,300, potentially are affected by this collection of information because all depository institutions are potential ATM operators subject to Regulation E and are required to provide notice to consumers of an ATM surcharge, and thus are respondents for purposes of the PRA. However, the extent to which this collection of information affects a particular depository institution depends on the number of ATMs an institution operates.

The proposed revision is not expected to significantly increase the ongoing annual burden of Regulation E; rather this would be a one-time burden increase for those institutions that, although not required, decide to revise their ATM signage disclosures. For purposes of the PRA, the Federal Reserve estimates that it would take depository institutions, on average, 8 hours (one business day) to revise and update ATM signage; therefore, the Federal Reserve estimates that the total annual burden for all depository institutions for this requirement would be 154,400 hours. With respect to the 1,289 Federal Reserve-regulated institutions which must comply with Regulation E, it is estimated that the total annual burden for this requirement would be 10,312 hours.

The preceding estimate represents an average across all respondents and reflect variations between institutions based on their size, complexity, and practices. The other federal agencies are responsible for estimating and reporting to OMB the total paperwork burden for the institutions for which they have administrative enforcement authority. They may, but are not required to, use the Federal Reserve's burden estimates.

Because the records would be maintained at state member banks and the notices are not provided to the Federal Reserve, no issue of [*49894] confidentiality arises under the Freedom of Information Act.

*Comments are invited on:* (a) Whether the proposed collection of information is necessary for the proper performance of the Federal Reserve's functions; including whether the information has practical utility; (b) the accuracy of the Federal Reserve's estimate of the burden of the proposed information collection, including the cost of compliance; (c) ways to enhance the quality, utility, and clarity of the information to be collected; and (d) ways to minimize the burden of information collection on respondents, including through the use of automated collection techniques or other forms of information technology. Comments on the collection of information should be sent to Michelle Long, Federal Reserve Board Clearance Officer, Division of Research and Statistics, Mail Stop 41, Board of Governors of the Federal Reserve System, Washington, DC 20551, with copies of such comments sent to the Office of Management and Budget, Paperwork Reduction Project (7100-0200), Washington, DC 20503.

**Text of Proposed Revisions**

Certain conventions have been used to highlight the proposed changes to the text of the regulation and staff commentary. New language is shown inside bold-faced arrows, while language that would be deleted is set off with bold-faced brackets. Comments are numbered to comply with **Federal Register** publication rules.

**List of Subjects in 12 CFR Part 205**

Consumer protection, Electronic fund transfers, Federal Reserve System, Reporting and recordkeeping requirements. For the reasons set forth in the preamble, the Board proposes to amend 12 CFR part 205 and the Official Staff Commentary, as follows:

**PART 205--ELECTRONIC FUND TRANSFERS (REGULATION E)**

1. The authority citation for part 205 would continue to read as follows:

**Authority:** 15 U.S.C. 1693b. 2. Section 205.16 would be amended by republishing paragraph (b) and revising paragraph (c)(1) as follows:

**§ 205.16 Disclosures on automated teller machines.**

\* \* \* \* \*

(b) *General.* An automated teller machine operator that imposes a fee on a consumer for initiating an electronic fund transfer or a balance inquiry shall--

(1) Provide notice that a fee will be imposed for providing electronic fund transfer services or a balance inquiry; and

(2) Disclose the amount of the fee.

(c) *Notice requirement.* An automated teller machine operator must comply with the following:

(1) *On the machine.* Post "the notice required by paragraph (b)(1) of this section" in a prominent and conspicuous location on or at the automated teller machine . a notice that:

(i) A fee will be imposed for providing electronic fund transfer services or a balance inquiry; or

(ii) A fee may be imposed for providing electronic fund transfer services or a balance inquiry, but this notice may be substituted only if there are circumstances under which a fee will not be imposed for such services; and

(2) *Screen or paper notice.* Provide the notice required by paragraphs (b)(1) and (b)(2) of this section either by showing it on the screen of the automated teller machine or by providing it on paper, before the consumer is committed to paying a fee.

2. In Supplement I to part 205, under *Section 205.16--Disclosures at Automated Teller Machines,* under *16(b) General,* under Paragraph 16(b)(1), paragraph 1. would be revised.

**SUPPLEMENT I TO PART 205--OFFICIAL STAFF INTERPRETATIONS**

\* \* \* \* \*

**Section 205.16--Disclosures on Automated Teller Machines**

1. *Specific notices.* An ATM operator that imposes a fee for a specific type of transaction -- such as for a cash withdrawal, but not for a balance inquiry, or for some cash withdrawals (such as where the card was issued by a foreign bank or by a card issuer that has entered into a special contractual relationship with the ATM operator regarding surcharges), but not for others -- may provide a general statement" notice on or at the ATM machine that a fee will or may be imposed for providing EFT services or may specify the type of EFT for which a fee is imposed. If, however, a fee will be imposed in all instances, the notice must state that a fee will be imposed.

\* \* \* \* \*

By order of the Board of Governors of the Federal Reserve System, August 19, 2005.

**Robert deV. Frierson,**

*Deputy Secretary of the Board.*

[FR Doc. 05-16801 Filed 8-24-05; 8:45 am]

BILLING CODE 6210-01-P