UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| RAYMOND MORRISSEY,<br><br>      Plaintiff,<br><br>      v.<br><br>WEBSTER BANK, N.A.,<br><br>      Defendant. | CIVIL ACTION<br>NO. 05-10984-WGY |

MEMORANDUM

YOUNG, D.J.                                      February 22, 2006

I.   **INTRODUCTION**

    This case involves a dispute over the adequacy of the fee notices posted on the automatic teller machines ("ATMs") owned by the defendant Webster Bank, N.A. ("Webster") in Massachusetts. After oral argument on Webster's Motion for Summary Judgment [Doc. No. 26], the Court entered judgment in its favor. Order of Jan. 11, 2006 [Doc. No. 37]. This Memorandum explains the Court's decision.

    A.   **Facts**

    Webster is a bank with its principal office in Connecticut, Second Am. Compl. [Doc. No. 24] ("Compl.") ¶ 5, which operates twenty-four ATMs in Massachusetts, Decl. of Stephen F. Russell

[Doc. No. 32] ("Russell Decl.") ¶ 5. One of these ATMs is located at 27 Park Street in Attleboro, Massachusetts. Russell Decl. ¶ 5; see Compl. ¶ 7. It was at this machine on May 2, 2005 that the plaintiff Raymond Morrissey ("Morrissey") withdrew $20.00 from his checking account. Compl. at ¶ 7 & Ex. A. Morrissey was assessed a fee of $1.50 by Webster.[1] See Compl., Ex. A. He was not a customer of Webster. Compl. ¶ 4.

It is undisputed that on or at the ATM used by Morrissey was the following notice:

> <u>Notice to Non-Webster Bank Cardholders ONLY - Service Fee May Apply</u>
>
> Webster Bank, the owner of this terminal, may charge a $1.50 fee to process a cash withdrawal or cash advance performed with a card not issued by Webster Bank. This fee will be added to the withdrawal amount and deducted from your account. This fee is in addition to any fees your financial institution may impose for performing this transaction.
>
> This fee will <u>NOT</u> be charged to Webster Bank Cardholders.
>
> Webster Bank, N.A., Member F.D.I.C.

Russell Decl. ¶ 6. Upon inserting his card into the ATM, Morrissey went through the following series of screens:

1. Choice of language;
2. Input of security code;
3. Choice of service (e.g., withdrawal);
4. Choice of account;
5. Input of amount of transaction;
6. Verification of fee acceptance.

---

[1] For ATMs attached to a Webster bank, as is the ATM at issue in this case, the fee is $1.50. For ATMs not attached to a Webster bank, it is $1.75. Of the twenty-four Webster ATMs in Massachusetts, only four fall into this latter category. Russell Decl. ¶ 14.

Decl. of Christopher M. Lefebvre [Doc. No. 34] ("Lefebvre Decl."), Ex. C. The sixth screen appeared thus:

```
                         FEE NOTICE
    WEBSTER BANK, THE OWNER OF THIS TERMINAL, ADDS TO CASH WITHDRAWALS
       (AND CREDIT CARD CASH ADVANCES, IF APPLICABLE) A TERMINAL USAGE
      FEE OF $1.50.  THIS CHARGE IS IN ADDITION TO ANY FEE WHICH MAY BE
                 ASSESSED BY YOUR FINANCIAL INSTITUTION.

                          WOULD YOU LIKE TO CONTINUE?
                                  PRESS IF YES ------------>
                                  PRESS IF NO  ------------>
```

Russell Decl. ¶ 11. It is undisputed that Morrissey pressed "YES" to continue. See Compl., Ex. A.

Webster does not charge a fee for all transactions to all non-customers. There is no fee for any balance transfer or inquiry, regardless of the consumer's financial institution. Russell Decl. ¶ 7. Furthermore, for cash withdrawals, Webster charges no fee at its Massachusetts ATMs if: (1) the consumer's financial institution is a participant in the "SUM Program", which is an agreement among 493 financial institutions to waive ATM fees for member consumers; (2) the consumer performs the transaction with a benefits card issued in connection with the Transitional Aid for Families with Dependent Children program or, since Hurricane Katrina, by the American Red Cross or Federal Emergency Management Agency[2]; or (3) the consumer's financial

---

[2] The Court does realize, as Morrissey points out, that strictly speaking, Hurricane Katrina and any banking reaction thereto is not relevant to the facts of this case because that disaster occurred several months after the events at issue here. See Pl.'s Mem. in Opp'n to Def.'s Mot. for Summ. J. [Doc. No. 34] ("Pl.'s Mem.") at 2 n.2. To the extent that that disaster informs policy considerations in this Court's interpretation of

institution is located outside the United States. Russell Decl. ¶¶ 8-9. The categories of non-customers who are not assessed a fee is subject to change at any time, as the exemption for Hurricane Katrina victims demonstrates. Id.

Webster cannot determine if a consumer must pay a fee until the consumer inserts his card into the ATM, the first six digits (the Bank Identification Number ("BIN")) are read[3], and the consumer selects which service he wants performed. Id. ¶ 10. From July 6 to August 10, 2005 (merely using arbitrary dates provided by Webster), there were 41,194 transactions at Webster's Massachusetts ATMs by non-Webster customers. Id. ¶ 15. Of these transactions, 31,908 (77.5%) were assessed no fee; conversely, 9,286 transactions by non-customers were assessed a fee. Id.

B. Procedural Posture

The parties postponed discovery and agreed to file dispositive motions on the legal issue of the adequacy of Webster's ATM fee notice. See Joint Statement of Counsel

---

the relevant statute, however, the banking reaction to Hurricane Katrina is relevant. See Part II.C, infra.

[3]The BIN is compared against a master list to determine if that person is a customer of the bank or of a "SUM Program" institution, to whom a fee never applies. Russell Decl. ¶ 8(a).

Pursuant to Local Rule 16.1(d) [Doc. No. 20] ("Joint Statement") at 1-2.  Webster moved for summary judgment.  [Doc. No. 26].[4]

### C.  Summary Judgment Standard

Summary judgment is warranted if, after reviewing the facts in the light most favorable to the non-moving party, no genuine issues of material fact remain, and the moving party is entitled to judgment as matter of law.  Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Summary judgement is particularly appropriate in this case because the only question presented is the legal application of facts that are not in dispute -- the very definition of judgment as matter of law.

---

[4] Morrissey asked that his Memorandum in Opposition to Webster Bank's Motion for Summary Judgment [Doc. No. 34] be considered as a cross-motion for summary judgment.  Pl.'s Mem. at 3 n.4.  Webster objects to this because, according to the Joint Statement [Doc. No. 20] adopted by the Court, see Order of Sept. 26, 2005 [Doc. No. 21], Morrissey had until October 31, 2005 to file any dispositive motions.  He did not file his memorandum until November 21, 2005.  The Court agrees with the sentiments expressed by the First Circuit in O'Connell v. Hyatt Hotels, cautioning that "litigants cannot be permitted to treat a scheduling order as a frivolous piece of paper idly entered, which can be cavalierly disregarded without peril."  357 F.3d 152, 155 (1st Cir. 2004) (internal quotation marks and citations omitted).  Furthermore, the Court has already been more-than-generous to Morrissey by allowing a tardy Second Amended Complaint in derogation of the Court's scheduling order.  See Order of Aug. 3, 2005 (granting Morrissey's Motion for Leave to Extend).  The Court, therefore, declines to treat Morrissey's memorandum as a cross-motion for summary judgment.

D.  Jurisdiction

This Court has jurisdiction under Title 28, Sections 1131 (federal question) and 1337 (commerce regulation) of the U.S. Code, as well as Title 15, Section 1693m(g) (Electronic Funds Transfer Act) of the U.S. Code.

## II.  DISCUSSION

Morrissey alleges that the fee notice provided by Webster was insufficient because it stated that a fee "may" apply when, in fact, there were instances when Webster charged a fee to non-customers, thus allegedly violating the Electronic Fund Transfer Act (the "Act") of 1978. Pub. L. No. 95-630, Title XX, 92 Stat. 3641 (codified as amended at 15 U.S.C. § 1693 et seq.).

A.  The Statute, Regulation & Agency Interpretation

The Act (as amended[5]) and regulations promulgated in accordance therewith[6] require that operators of ATMs provide to consumers notice of potential ATM transaction fees at four specific times: (1) when opening an account, 12 C.F.R §

---

[5] The particular provision at issue here was inserted by the ATM Fee Reform Act of 1999, which itself was part of the broader Gramm-Leach-Bliley Act. Pub. L. No. 106-102, §§ 701-05, 113 Stat. 1338 (1999).

[6] The Act authorizes the Board of Governors of the Federal Reserve System ("the Board") to promulgate regulations to effectuate the Act. 15 U.S.C. § 1693b(a).

205.7(b)(11), App. A-2(j); (2) at or on the ATM machine, 15 U.S.C. § 1693b(d)(3)(B)(i); 12 C.F.R. § 205.16(c)(1); (3) on the ATM screen (or paper receipt) before the consumer is "irrevocably committed" to the transaction, 15 U.S.C. § 1693b(d)(3)(B)(ii); 12 C.F.R. § 205.16(c)(2); and (4) upon completion of the transaction in the form of a paper receipt, if requested, 12 C.F.R. § 205.9(a)(1).

Specifically with regard to "on-machine" notification, the Act mandates that the Board's regulations "shall require" ATM operators "who impose[] a fee on any consumer for providing host transfer services to such consumer to provide notice . . . to the consumer (at the time the service is provided) of (i) the fact that a fee is imposed by such operator for providing the service; and (ii) the amount of any such fee." 15 U.S.C. § 1693b(d)(3)(A).[7]

The regulation passed by the Board which was operable in May of 2005, set forth in Title 12, Section 205 of the Code of Federal Regulations ("Regulation E")[8], provided in pertinent part that "[a]n automatic teller machine operator that imposes a fee on a consumer for initiating an electronic fund transfer or a

---

[7]"ATM operator", for purposes of this provision, only includes those operators providing services to non-customers. 15 U.S.C. § 1693b(d)(3)(D)(i)(II).

[8]Regulation E recently was amended, effective February 9, 2006. See Rules and Regulations, Electronic Fund Transfers, 71 Fed. Reg. 1638 (Jan. 10, 2006) (to be codified at 12 C.F.R. § 205.16).

balance inquiry shall: (1) Provide notice that a fee will be imposed for providing electronic fund transfer services or a balance inquiry; and (2) Disclose the amount of the fee." 12 C.F.R. § 205.16(b).

There has been general "confusion" -- lawsuit-induced paranoia, more likely -- as to the exact wording of the required notice for ATMs at which only some consumers or transactions incur a fee. Morrissey contends that if a fee is charged to any consumer, the statute and regulation require the on-machine notice to state that a fee "will" be charged. Pl.'s Mem. at 5-6. Indeed, the Consumer Banking Association frets that too literal an interpretation of the statute and Regulation E would require just such a notice. Decl. of Hobart F. Popick [Doc. No. 31], Ex. C, Letter from Consumer Banking Association to Jennifer J. Johnson, Secretary, Board of Governors of the Federal Reserve System (no date)("CBA Letter") at 2.

In September of 2004, the Board proposed amendments to the Official Staff Interpretations of Regulation E, "to clarify that if there are circumstances in which an ATM surcharge will not be charged for a particular transaction, ATM operators may disclose on the ATM signage that a fee may be imposed or may specify the type of . . . consumers for which a fee is imposed." Proposed Change to Official Staff Interpretation, 69 Fed. Reg. 55,996, 56,005, 56,011 (proposed Sept. 17, 2004) (to be codified at 12 C.F.R. § 205.16, Supp. I). On August 25, 2005 the Board went

8

even further and proposed changes to Regulation E itself, amending Title 12, Section § 205.16(c) of the Code of Federal Regulations to allow for a notice that "[a] fee may be imposed", but "only if there are circumstances under which a fee will not be charged for such services . . . ." Proposed Change to Rule, 70 Fed. Reg. 49,891, 49,894 (proposed Aug. 25, 2005) (to be codified at 12 C.F.R. § 205.16); see also Lefebvre Decl., Ex. A. This, again, was "to clarify" that such a notice was proper because "[t]he Board continue[d] to believe that a literal interpretation of the current rule could lead to overly broad disclosures . . . ." Proposed Change to Rule, 70 Fed. Reg. at 49,892. These amendments recently were adopted "largely as proposed . . . ." Final Rule, 71 Fed. Reg. 1638, 1655.

### B. Morrissey's Argument

Morrissey's assertion is simple: the "plain language" of the statute and regulation require that when a fee is charged to <u>any</u> consumer for <u>any</u> transaction, the ATM must display a notice that a fee "will" be charged. Pl.'s Mem. at 5. Because Webster charged some consumers a fee when its notice stated only that a fee "may" be charged, it violated the statute and regulations and is, therefore, liable.[9]

---

[9]The amount of liability would be "(1) any actual damage sustained by such consumer as a result of such failure [to give notice]; (2)(A) in the case of an individual action, an amount not less than $100 nor greater than $1,000; or (B) in the case of

At first glance, Morrissey's argument appears plausible. The statute requires that the Board's regulations "shall require" an ATM operator "who imposes a fee on <u>any</u> consumer for providing host transfer services to such consumer to provide notice . . . of (i) the fact that a fee <u>is</u> imposed . . . ." 15 U.S.C. § 1693b(d)(3)(A) (emphasis added). Furthermore, the Board's regulations stated that an ATM operator "<u>that imposes a fee</u> on <u>a consumer</u> . . . shall: (1) Provide notice that a fee <u>will be imposed</u> . . . ." 12 C.F.R. § 205.16(b) (emphasis added).

Morrissey contends that if an ATM operator imposes a fee on any non-customer, for any service, then the notice posted must state that a fee "will" be imposed -- even though some consumers will not be charged a fee. Compl. ¶ 13. Under Morrissey's interpretation of the statute and regulations, Webster's notice should have read thus:

> <u>Notice to Non-Webster Bank Cardholders ONLY - Service Fee Will Apply</u>
>
> Webster Bank, the owner of this terminal, will charge a $1.50 fee to process a cash withdrawal or cash advance performed with a card not issued by Webster Bank. This fee will be added to the withdrawal amount and deducted from your account. This fee is in addition to any fees your financial institution may impose for performing this transaction.
>
> This fee will <u>NOT</u> be charged to Webster Bank Cardholders, transactions performed with a SUM Program member bank card, a foreign bank card, or with an electronic benefits card issued by Transitional Aid for Families with Dependent Children (TAFDC), the

---

a class action, such amount as the court may allow [up to $500,000]; and (3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee . . . ." 15 U.S.C. § 1693m(a).

>    American Red Cross, or the Federal Emergency Management Agency
>    (FEMA).
>
>    Webster Bank, N.A., Member F.D.I.C.

See Pl.'s Mem. at 6 n.6. Note that, aside from using "will" instead of "may", the major difference in this notice from the one used by Webster is the lengthier list of exceptions to the fee. Such a notice, says Morrissey, would accommodate the circumstance in which Webster finds itself: (1) not charging a fee to <u>all</u> non-customers, and (2) a statute requiring that if a fee is charged to <u>any</u> non-customer, notice be given that a fee "will" be charged.

### C. Analysis

Morrissey cites no case law, agency ruling, or anything else of binding or persuasive authority which has so interpreted the statute and regulation. This is not surprising. For Morrissey's interpretation is ridiculous -- his claim bordering on the frivolous.

Even read "plainly", the statute does not always require notice that a fee "will" be charged, as Morrissey suggests. Though starting with the general statement that the notice provision applies to an ATM operator who imposes a fee "on <u>any</u> consumer", the statute then requires that the notice actually be given only "to <u>such</u> consumer . . . that a fee is imposed." 15 U.S.C. § 1693b(d)(3)(A) (emphasis added). Thus, the statute

"plainly" requires on-machine notice only to those consumers on whom a bank imposes a fee. Indeed, only this reading gives meaning to all the words in the statute. See Connecticut Nat'l Bank v. Germain, 503 U.S. 249, 253 (1992) (stating that a court "should disfavor interpretations of statutes that render language superfluous"). So too with Regulation E. By its terms, the notice regulation only applies to an ATM operator "that imposes a fee." Depending on the identity and intentions of the consumer, an ATM operator sometimes does not impose a fee. Indeed, this is usually the case with Webster. In such a circumstance, the statute "plainly" does not require the operator to give notice at all.

One is left, then, with the conundrum of a statute that "plainly" requires on-machine notice to some consumers but not to others. If it were possible instantly upon a consumer walking up to an ATM to know whether the statute required on-machine notice to that particular consumer, then the statute easily could be followed. But it is a metaphysical fact that this is simply not possible until the consumer has proceeded to initiate the transaction.[10] "The law does not require impossibilities." Pointer v. United States, 151 U.S. 396, 413 (1894). The statute cannot mean what it "plainly" says. Because a posted sign cannot

---

[10] This problem is avoided with the "on-screen" notice because if the consumer or transaction are of the type as to which no fee will be charged, once that information is known, the ATM simply will not display the on-screen notice.

appear and disappear of its own volition or morph itself into the appropriate notice, the statute cannot be read to require such wizardry.[11]

Wisely, Morrissey does not advocate such Hogwarts-style on-machine notice -- even though this is exactly what would be required by the "plain" reading of the statute. Instead, he argues that the posted notice in cases such as Webster's should state first that a fee "will" be imposed and then follow with the list of exceptions -- i.e., the circumstances in which a fee will not be imposed. Though this is likely an acceptable form of notice, the Court disagrees that it is the only one. As Morrissey acknowledges, "the statute and regulation do not dictate the precise form the disclosures must take . . . ."[12] Pl.'s Mem. at 5. Even the form of notice Morrissey urges would

---

[11] "'[U]nreasonableness of the result produced by one among alternative possible interpretations of a statute is a reason for rejecting that interpretation in favor of another which could produce a reasonable result.'" Kelly v. United States, 924 F.2d 355, 361 (1st Cir. 1991) (quoting 2A Sands, Sutherland Stat. Const. § 45.12 at 54 (4th ed. 1984-85)). "This prudential canon of construction holds equally true of agency regulations." Id.

[12] To be sure, Congress knows how to require the exact wording of notices when it wants to. It mandated that the Board issue "model clauses" for use in complying with the notice provisions of Title 15, Section 1693c of the U.S. Code. 15 U.S.C. § 1693b(b). Such a provision is conspicuously absent from section 1693b(d)(3). "It is well settled that where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." Duncan v. Walker, 533 U.S. 167, 173 (2001) (internal quotation marks omitted).

violate his own wooden reading of the law (which this Court has just rejected). Read "plainly", the statute and regulation do not purport to allow even the posting of exceptions.

The obvious solution to this "problem" has no doubt occurred to the reader several pages ago: The notice "on the machine" should state that a fee "may" be imposed, while the notice "on the screen" should appear only when a fee in fact is imposed. This application of the statute and regulation accounts not only for the on-machine notice provision in the statute, but also logically integrates the on-screen notice requirements. 15 U.S.C. § 1693b(d)(3)(B); 12 C.F.R. § 205.16(c); see Richards v. United States, 369 U.S. 1, 11 (1962) ("[A] section of a statute should not be read in isolation from the context of the whole Act, and [when] . . . interpreting legislation, we must not be guided by a single sentence or member of a sentence, but (should) look to the provisions of the whole law . . . ." (footnote and internal quotation marks omitted)).

That the form of notice employed by Webster is acceptable is recognized by the revised regulation and interpretation recently adopted by the Board. The commentary now specifically allows that

> [a]n ATM operator that imposes a fee for a specific
> type of transaction -- such as . . . for some cash
> withdrawals, but not for others (such as where the card
> was issued by a foreign bank or by a card issuer that
> has entered into a special contractual relationship
> with the ATM operator regarding surcharges) -- may
> provide notice on or at the ATM that a fee will be

> imposed <u>or a notice that a fee may be imposed</u> . . . or may specify the type of EFT for which a fee is imposed or may be imposed. If, however, a fee will be imposed in all instances, the notice must state that a fee will be imposed.

Final Rule, 71 Fed. Reg. at 1664 (effective Feb. 9, 2006) (to be codified at 12 C.F.R. § 205.16, Supp. I) (emphasis added). Moreover, the Board has amended Regulation E, itself, to allow that an ATM operator may post a notice stating that

> (i) [a] fee will be imposed . . . ; or (ii) [a] fee <u>may</u> be imposed for providing electronic fund transfer services or for a balance inquiry, but this notice . . . may be substituted . . . only if there are circumstances under which a fee will not be imposed for such services . . . .

Final Rule, 71 Fed. Reg. at 1659 (effective Feb. 9, 2006) (to be codified at 12 C.F.R. § 205.16(c)(1)) (emphasis added).

Even though these changes have yet to go into effect, the Board's commentary which accompanies them indicates that the form of notice explicitly provided for in the changes was likewise acceptable under the previously existing law. The Board offered these changes "to <u>clarify</u>" the existing rules. Final Rule, 71 Fed. Reg. at 1655 (emphasis added). That is, the Board <u>already</u> believed that the statute and its regulations allowed the form of notice used by Webster. Final Rule, 71 Fed. Reg. at 1656 ("[W]hile the Board is amending the regulation to address this issue, this amendment does not represent a change in the Board's interpretation of the rule's requirements."). This sentiment was expressed as early as September of 2004 in the Board's first

15

proposed change on this topic -- well before the events at issue in this case.[13]  See Proposed Change to Official Staff Interpretation, 69 Fed. Reg. at 56,005.[14]

Such an interpretation is fully consistent with the purpose of the Act as a consumer protection statute.  See Burns v. First Am. Bank, No. 04-C-7682, 2005 WL 1126904, at *5 (N.D. Ill. Apr. 28, 2005).  Though Morrissey claims that the statute requires

---

[13] Even if this Court disagreed with the Board in its interpretations of the statute and its own regulation, the Court likely would have to give significant deference to such interpretations.  The Court must give controlling weight to an agency interpretation of its own regulation when the regulation is consistent with the language of the regulation.  Thomas Jefferson Univ. v. Shalala, 512 U.S. 504, 512 (1994); Alliance to Protect Nantucket Sound, Inc. v. U.S. Dep't of the Army, 398 F.3d 105, 112 (1st Cir. 2005).  Likewise, to the extent Congress has not directly spoken, an agency's interpretation of its enabling statute (by way of its regulations) is provided at least some, if not significant, deference (if the regulation was properly promulgated).  See United States v. Mead Corp., 533 U.S. 218 (2001); Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837 (1984).

[14] Morrissey's assertion that this Court "largely based [its decision] upon the Federal Reserve Board's adoption of the 'Rule E Revisions'" is simply incorrect.  Pl.'s Post-Hr'g Mem. [Doc. No. 38] at 1-2 (emphasis added).  Rather, the Court made its ruling by interpreting the relevant statute and regulations in effect on May 2, 2005 -- the day Morrissey made his ATM withdrawal.  Using the methods of statutory construction as detailed in this memorandum, the Court determined that those laws permitted the type of notice employed by Webster.  The Court, therefore, rejects Morrissey's argument that legislative history, id. at 2-4, and methods of statutory construction, id. at 4-7, require an interpretation whereby on-machine notice must state that a fee "will" be charged when, in fact, one may not be.  Moreover, contrary to Morrissey's suggestion, id. at 2, the notice required by the new Regulation E, which went into effect on February 9, 2006, is not at issue in this case, and this Court expresses no opinion in that regard.

16

that a consumer know "that a fee will be imposed <u>before the consumer invests any time into using the ATM in question</u>", Pl.'s Mem. at 6, no such extreme mandate fairly can be read into the statute. Technically, such knowledge is presently impossible to provide. Further, if such on-machine notice were given, the on-screen notice would be redundant. A more reasonable interpretation allows for the type of notice provided by Webster and is explained by the Board in its commentary accompanying its amendments:

> [T]he signage [on-machine] disclosure is intended to allow consumers to identify ATMs that <u>generally</u> charge a fee for use, while the on-screen disclosure made after the consumer has entered his or her card into the machine but before the consumer is committed to the transaction provides a <u>more specific</u> disclosure regarding whether a fee will be incurred in that particular transaction.

Final Rule, 71 Fed. Reg. at 1655 (emphasis added). This surely is the integrated approach conceived by the statute. It would be unreasonable to assume that a consumer protection statute such as the Act would require giving consumers inaccurate information, as would be the case here if Webster were required to tell consumers that a fee <u>will</u> be charged when, in fact, in most instances one is <u>not</u> charged.[15] In addition, allowing an ATM operator to use a "may" notice instead of Morrissey's proposed "will"-plus-

---

[15] Nevermind the fact that Morrissey's proposed notice is no more clear than what Webster posts presently. It would be no use to post notice of an exception for "SUM Program" member customers without also posting the names of the 493 member institutions.

17

exceptions notice also provides for the times when an ATM operator changes its exceptions policy. Requiring each and every exception to be printed on the notice would necessitate new placards every time the policy changed. This would hinder the introduction of beneficial new exceptions, such as those instituted after Hurricane Katrina.

The interpretation accepted by the Court also is consistent with the legislative intent, which sought "simply [to] put[] existing practice into law." Press Release, Rep. Marge Roukema, Banking Committee OKs Roukema ATM Fee Disclosure (Mar. 10, 1999), http://financialservices.house.gov/banking/31099rou.htm. At the time the relevant section of the Act was passed, it was the practice of financial institutions to provide notice that a fee "may" be imposed. See CBA Letter at 3-4.

What Morrissey truly wants becomes evident toward the end of his argument:

> The [Act] does not require banks to charge for ATM services. In fact, on information and belief, some banks have begun waiving all non-customer ATM charges. Webster Bank could have joined that movement and waived all its non-customer ATM charges for cash withdrawals.

Pl.'s Mem. at 7 (footnote omitted). This may be true, but neither does the Act prohibit ATM operators from charging fees for services. Such a prohibition certainly is within the power of Congress to legislate. Morrissey should take his argument there -- or to Webster's "Suggestion Box."

## III. CONCLUSION

Because there are no material facts in genuine dispute and because neither the Act nor Regulation E requires ATM operators to post a notice stating that a fee "will" be charged when there are some cases in which a fee will not be charged, the Court ALLOWED Webster's Motion for Summary Judgment [Doc. No. 26].[16]

```
                              William G. Young
                              _____
                              WILLIAM G. YOUNG
                              DISTRICT JUDGE
```

---

[16] Morrissey also brings a twin claim that Webster violated Chapter 93A of the Massachusetts General Laws. Compl. ¶¶ 22-24. Webster claimes that the required demand letter sent by Morrissey was defective. Def.'s Mem. in Supp. of its Mot. for Summ. J. [Doc. No. 28] at 16-18. Even assuming it was not defective, Morrissey ties his Chapter 93A claim to the violation of the Act and of Regulation E. Because the Court has concluded that there was no violation, Morrissey's Chapter 93A claim must fail. See Egan v. Athol Mem. Hosp., 971 F. Supp. 37, 47 (D. Mass. 1997) (Gorton, J.) (holding that where there was no evidence of the claimed underlying violation, and where there were "no unique arguments related to [the] Chapter 93A claim", defendant was entitled to summary judgment on plaintiff's Chapter 93A claim).